STATE OF MONTANA, Plaintiff and Respondent, *v.* JACK LANDE, Defendant and Appellant.

No. 14119.
Argued Dec. 12, 1978.
Decided Jan. 19, 1979.
589 P.2d 666.

Hugh G. Kidder (argued), Missoula, for appellant.

Mike Greely, Atty. Gen., Helena, J. Fred Bourdeau, County Atty., Carroll Blend (argued), Deputy County Atty., Great Falls, for respondent.

MR. CHIEF JUSTICE HASWELL delivered the opinion of the Court.

Defendant appeals from his conviction by a jury in Cascade County of the crimes of robbery and aggravated burglary.

On the evening of October 24, 1976, defendant and two companions forced their way into the home of Zollie Kelman of Great Falls. Defendant was armed with a "taser", a device which fires two barbs and induces a seizure in its victim by electrical shock. His accomplices carried pistols.

One of the intruders held Kelman's wife and family at gunpoint, and the other two forced Kelman to accompany them as they searched the house for a cache of silver dollars they had been told were kept there. While the search was in progress, a neighbor alerted the Great Falls police department and four officers were dispatched to the scene. Defendant was shot in the leg attempting to flee from the officers, and his companions were apprehended inside the Kelman residence.

An information was filed on November 1, 1976, in the District Court, Cascade County, charging defendant with the offenses of robbery and aggravated burglary. During the initial stages of the prosecution, defendant was represented by Richard Lang, a Cascade County Public Defender. Defendant pled not guilty to both offenses.

On January 20, 1977, defendant indicated through his counsel that he would be willing to make an incriminating statement if his bond were lowered. The bond was lowered and defendant gave a detailed account of the events leading up to and involved in the crime. He thereafter posted bond and was released from custody.

On March 9, 1977, an order was entered granting defendant a trial separate from that of his accomplices.

For purposes of this appeal, the circumstances at issue really began on August 5, 1977, when Richard Lang filed a motion to withdraw as defendant's counsel. At the hearing on the motion, Mr. Lang informed the court that he was no longer associated with the office of the Cascade County Public Defender. He explained that he had agreed with his former supervisor that he would continue to handle defendant's case only as long as it did not go to trial. Since defendant had decided to resist the charges against him, Lang would no longer represent him.

After Lang had explained the circumstances, defendant was called to the witness stand. The following exchanges occurred:

"Q. Are you employed, Mr. Lande? A. Yes sir; I am.

"Q. And where are you employed? A. I am a Piping Foreman for R. H. Grover, Inc., in Missoula.

"Q. And how much do you earn? A. Somewhere over $30,000 a year.

"Q. And how long have you been employed? A. Since June 2nd.

"Q. And Mr. Lande, do you feel there is anything else that is relevant or you would wish to say to the Judge at this time? A. Only that because of my being off work on disability for so long, and having only recently began to get to work, and I had bills that accrued during my disability and so forth, that I find necessary to pay, I still owe $1,000 on my medical expenses that I haven't been able to accumulate enough moneys to give a lawyer any kind of a decent retainer, so as a result I am really at this time unable to hire a lawyer, but I hope in the not too distant future I will have accumulated enough that I can hire someone. ..."

". . . .

"Q. You said that you were not able to afford an attorney — specifically what are the debts that you owe at this time? A. I owe about $1,000 left on my medical bills, from $13,000 it originally was. I still, of course, owe on my trailer house.

"Q. How much is that? A. I paid $6,700 for it, and I have made a down payment — payments and furnishings, so forth, about $2,500. Other than that, except for my taxes, I owe about $400 in taxes and the Government wrote me a letter saying I'd better pay them, which I have to pay this month. Other than that, I have no great debts. I managed in the last two months, to pretty well take care of it — I wasn't in debt in the first place, but I would be able to take care of what I did accrue while I was disabled."

After a reference by defendant to some anticipated surgery on his ears, the transcript continues:

"THE COURT: The court's immediate problem, Mr. Lande, is not your medical condition, but the fact that Mr. Lang moved to be removed as counsel of record, and you now have, at least, pursuant to your own testimony, demonstrated the fact that you are in a capacity or able financially to retain counsel to represent you. . .

"* * *

"THE COURT: You have indicated, Mr. Lande, that you have contacted an attorney down in Missoula?

"MR. LANDE: Yes sir.

"THE COURT: Is he in fact going to represent you or don't you know?

"MR. LANDE: I don't really know, sir, at this point. I've only talked to him briefly once, and that was by telephone conversation, and I told him briefly, and he said that I could tell the court that he would be willing to make at least one trip to Great Falls.

"THE COURT: As attorney, he should know better than that. He is either in or out. He is not going to represent you to make a trip to Great Falls and turn around at the time of trial and say, 'I'm not going to represent Mr. Lande because that isn't what I contracted for.'

"MR. LANDE: If it ever comes to trial, I will have representation with me.

"THE COURT: In view of your representation, that you are making $30,000 a year, the court at this point in time can't declare

you indigent, and appoint an attorney to represent you. I am aware of the fact that in the course of your last year or so you acquired some medical bills which require payment, but if those are $1,000, as you indicate the balance is, and trailer payment has to be made, those two things, plus the back taxes, do not in and of themselves constitute a state of indigency which would require the court to appoint a public defender; particularly in view of the amount of your salary, you understand that?

"MR. LANDE: The court is not required to, is that what you are saying?

"THE COURT: Yes.

"MR. LANDE: I understand that.

"THE COURT: Under the circumstances, Mr. Lang, I will grant your motion to withdraw as counsel of record. I will reset this matter within the next 45 days, Mr. Lande; do you understand?

"MR. LANDE: Yes sir.

"THE COURT: Now, before you leave today you consult with Mr. Lang and provide an address to him, or where the court can send any orders, and you forthwith will contact this attorney down in Missoula with regard to your representations, and you will then inform the court that he is in fact representing you; do you understand?

"MR. LANDE: Yes sir."

Trial was subsequently reset for September 28, 1977. Defendant appeared without counsel. On September 29, the following occurred in chambers.

"THE COURT: . . . Mr. Lande; this Court ordered this set for trial August 22nd, 1977. Do you recall that?

"MR. LANDE: Yes.

"THE COURT: Do you also recall Mr. Lang from the Public Defender's office filed his motion to withdraw as counsel on August 5th, and heard that matter on the 15th of August; do you remember that?

"MR. LANDE: Yes.

"THE COURT: You understand and remember you testified at that time you were gainfully employed and making in excess of $36,000 a year?

"MR. LANDE: $30,000 — in excess of $30,000. I believe that is what I said.

"THE COURT: You also indicated at that time that your indebtedness, major indebtedness constituted about $1,000 for hospital and medical bills; is that right?

"MR. LANDE: Yes sir.

"THE COURT: And pursuant to that hearing the court made an order vacating that trial date and resetting it for the 28th. I directed you in that order to obtain counsel and notify us within ten days of the name and address of that attorney; is that right?

"MR. LANDE: Yes.

"THE COURT: Did you notify this court of your attorney?

"MR. LANDE: What I did was this: I contacted a couple of lawyers, and talked to them at length and found out I didn't have enough money to pay, so I wrote the County Attorney's office and told them of my problem, and he answered and his answer was —

"THE COURT: You didn't contact the court?

"MR. LANDE: I was going to trial and better find me a lawyer and I tried with the funds I had. Just hadn't accumulated enough at that time.

"THE COURT: You indicated yesterday on the 28th at a pretrial conference we had at that time you were unable to obtain counsel and they all wanted at least $5,000.

"MR. LANDE: That is what they told me.

"THE COURT: You indicated to me at that time you had acquired $1,500 with which to pay counsel but wasn't enough; is that right?

"MR. LANDE: That is what they told me.

"THE COURT: Predicated upon those facts, Mr. Lande, and predicated upon the fact you did not contact this court with regard to those problems incident thereto, and consistent with your testi-

mony with regard to the fact that you had $1,500 cash, and that you couldn't acquire counsel with that kind of money, the court finds that to be simply incredible.

"MR. LANDE: At that time I didn't have the $1,500. I have accumulated that since then.

"THE COURT: In any event, the facts in this case as we have indicated here right now, Mr. Lande, indicate that what you have done constitutes a knowing waiver of the right to counsel, and we are going to proceed in this matter in front of that jury pro se. Do you understand?

"MR. LANDE: I understand. That is the court's right."

Following this exchange in chambers, trial was begun immediately with defendant representing himself. The jury returned a verdict of guilty on both charges. On November 3, 1977, defendant was sentenced to ten years in prison on each count, the sentences to run concurrently. This appeal followed.

The issue we find dispositive of this appeal is: Under the circumstances present here, was defendant's right to be represented by counsel violated when he was required to proceed through his trial *pro se?* In addition to this issue, defendant has alleged error in certain rulings on evidence and in remarks made by the trial court in regard to the availability of certain defenses. Since we conclude that a new trial is necessary on the right to counsel issue, we will not address the other alleged errors.

The appointment of counsel for indigent defendants is provided for in section 95-1001, R.C.M. 1947. The pertinent part of the statute reads:

"If the offense charged is a felony and if the defendant desires counsel and is unable to employ counsel a court of record must assign counsel to defend him."

The Commission comment to section 95-1001 includes the following:

"The court must determine whether the defendant is indigent, i. e., unable to employ counsel, and therefore entitled to assigned counsel. In making this determination the court may wish to con-

sider such factors as income, property owned, savings, investments, pensions, unemployment compensation, social security, resources of spouse, parents, or relatives, and the number and age of dependents. The defendant's ability to post bail may be another consideration."

We recognize that matters dealing with appointment of counsel for indigent defendants are for the discretion of the trial court. *Petition of Jones* (1963), 143 Mont. 309, 387 P.2d 712; 23 C.J.S. Criminal Law § 982(4). We also agree that it would be impossible for an appellate court to lay down specific and intricate rules defining standards of indigency in each case. Cf. *People v. Chism* (1969), 17 Mich.App. 196, 169 N.W.2d 192. Further, we are in accord with the line of authority holding that willful failure to retain counsel can amount to a waiver of the right to counsel. *United States v. Arlen* (2nd Cir. 1958), 252 F.2d 491; *United States v. Abbamonte* (2nd Cir. 1965), 348 F.2d 700; *United States v. Gates* (5th Cir. 1977), 557 F.2d 1086. On the record before us here, however, we cannot conclude that such a willful failure has occurred.

Our concern here is with the adequacy of the trial court's inquiry into defendant's financial status. We do not find that inquiry thorough and complete enough to support the determination of nonindigency and the subsequent ruling that defendant waived his right to counsel when he appeared unrepresented. All that appears in the record as to what that inquiry consisted of is included in the excerpts quoted above from the transcript. Defendant's testimony that he earned over $30,000 a year must be qualified by noting that he worked at that projected income level only a little over a month and had no such income previously.

While this Court will never countenance the strategy of a clever defendant to force a trial court to require him to proceed *pro se* as a means of furnishing him error on appeal, if that be the case the burden is on the state to present a record adequate to establish it. That burden has not been met here. No efforts were undertaken to substantiate the truth or falsity of defendant's claims that he had

contacted several attorneys but could not meet their demands for a retainer. It does not appear that an inventory of defendant's assets was ever made. The record reflects only defendant's claim that he tried to get a lawyer and could not, and the summary rejection of that claim by the court.

For the foregoing reasons, defendant's conviction is reversed. The cause is remanded to the District Court for a new trial.

MR. JUSTICES DALY, SHEA and SHEEHY concur.

MR. JUSTICE HARRISON, dissenting:

I respectfully dissent. I believe what we have here is a clever defendant who has manipulated the system to get a new trial when by his own admission he committed the felony charged. In my opinion the trial judge did more than was required by statute to protect defendant's rights. Defendant's statements that he would secure counsel, the fact that he ignored the court's directions to tell it who counsel would be, and the fact that he did not request a continuance, all lead to the conclusion that this was a preconceived plan for self-representation. Once he placed the court into ordering trial, without counsel for representation, he laid the foundation for exactly what has happened as a result of the majority decision.

We have held in numerous cases that matters dealing with the appointment of counsel for indigent defendants are for the discretion of the trial court. *Petition of George Jones* (1963), 143 Mont. 309, 387 P.2d 712; 23 C.J.S. Criminal Law §982(4). The prevailing case authority is that where the accused is able to secure counsel, but fails or *refuses* to do so, he waives his right to counsel. 23 C.J.S. Criminal Law § 979(3). In my opinion, based on this record, defendant refused to obtain counsel as a strategic tactic, and the ruling of the trial court should be upheld.