408 So.2d 635 (1981)
Reynold ENRIQUE a/k/a Reinolds Enrique Castro, Appellant,
v.
The STATE of Florida, Appellee.
No. 80-914.
District Court of Appeal of Florida, Third District.
December 22, 1981.
Rehearing Denied January 29, 1982.
*636 John H. Lipinski, Miami, for appellant.
Jim Smith, Atty. Gen. and Joel D. Rosenblatt, Asst. Atty. Gen., for appellee.
Before DANIEL S. PEARSON and FERGUSON and JORGENSON, JJ.
DANIEL S. PEARSON, Judge.
The trial court's determination that the defendant was financially able to afford counsel, born of inadequate inquiry and nourished only by repetition, led to its inexorable refusal to appoint counsel for the defendant, and, thereafter, the defendant's counselless and otherwise unknowing and unintelligent waiver of jury trial, which leads us now to reverse the defendant's convictions.
Between November 14, 1979, the date of Castro's first appearance on charges of grand theft, and March 27, 1980, the date when the court imposed five-year concurrent sentences on these charges and an intervening charge of burglary of a conveyance, Castro came before the court nine times. On each occasion, he appeared without counsel.
At his initial appearance on the grand theft case, Castro, in response to the court's questions, stated that he had not made arrangements to get an attorney, but would make such arrangements. The inquiry into Castro's financial ability to employ counsel elicited the single fact that Castro was employed in construction work. Two weeks later, the court, learning that Castro was no longer employed, appointed the Public Defender to represent him. That same day Castro went before a magistrate for a first appearance hearing on the burglary case. The magistrate determined that Castro was not entitled to court-appointed counsel after an inquiry which revealed only that this eighteen-year-old defendant did not live with his mother; could make a bond, the cost of which would be no more than his two-week paycheck; earned $160 a week; and was single. The hearing concluded with the magistrate referring Castro to a "low cost attorney."[1]
At the defendant's later arraignment on the burglary charge, the trial court learned of the magistrate's action. Without further inquiry, the trial court adopted the magistrate's ruling refusing to appoint the Public Defender and revoked its earlier appointment of the Public Defender in the grand theft case. A week later, Castro was again before the court:
"THE DEFENDANT: I called [a "lowcost" attorney], and he talked to me, and I couldn't afford one. So, he told me to come in court and tell you.
"THE COURT: You have to get your own attorney. You are not eligible for a Public Defender."
The court told Castro to return on January 9, 1980.
On January 9, Castro, still without counsel, waived jury trial on the burglary charge. The record reflects that, preceding the waiver, the court merely advised Castro that he was entitled to be tried by a jury of his peers, "six people from the community selected through the jury panel." It then asked the defendant whether he wanted to be tried by the court or jury, and the defendant responded "whichever." The defendant then executed a written waiver of jury trial.
*637 The right to trial by jury is a constitutional right. Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); Molfetas v. State, 323 So.2d 598 (Fla.3d DCA 1975). As in the case of the waiver of any constitutional right, the waiver of trial by jury must be shown to have been knowingly and intelligently made. State v. Garcia, 229 So.2d 236 (Fla. 1969); Viggiani v. State, 390 So.2d 147 (Fla.3d DCA 1980); Tosta v. State, 352 So.2d 526 (Fla.4th DCA 1977); Molfetas v. State, supra. The existence of a written waiver does not, ipso facto, show that a defendant freely, intelligently and voluntarily waived his right to trial by jury. Viggiani v. State, supra.[2]
Here the defendant was without counsel,[3] and there is not the slightest indication that he was possessed of any more information respecting the meaning of jury trial than that provided by the court. However, that meager information did not, for example, tell the defendant that he could participate in the selection of the jury or that any jury verdict must be unanimous. See Burch v. Louisiana, 441 U.S. 130, 99 S.Ct. 1623, 60 L.Ed.2d 96 (1979). Without such minimal information, the defendant could not possibly have understood the consequences of waiving jury trial, and the waiver could not be knowing and intelligent.
Three weeks went by before the defendant and his bondsman appeared in court. The bondsman informed the court that the defendant had been working only for three weeks, earning $140 per week,[4] and could not afford an attorney. The court stated that it could not appoint an attorney for the defendant.[5] The proceedings concluded with the defendant, still counselless, waiving jury trial on the grand theft charges with no further advice from the court as to the meaning of the waiver.
On February 14, 1980, the defendant, without counsel, was convicted after a non-jury trial on the charges of grand theft and burglary. While the defendant's convictions must be reversed because the waivers of jury trial are not shown to be knowing and intelligent, we are impelled by the circumstances of this case to clarify the obligations of the trial court in determining the right of a defendant to appointed counsel.
It is axiomatic that an accused is entitled to counsel at every critical stage of a criminal proceeding, see, e.g., Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and that in every case the trial is a *638 critical stage. Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Absent a determination that an accused is financially able to retain counsel, he may not be denied the assistance of counsel. See Wood v. United States, 389 U.S. 20, 88 S.Ct. 3, 19 L.Ed.2d 20 (1967). Castro's affirmative response at his very first hearing to the court's question, "Are you going to make arrangements to get an attorney?" in the absence of a determination that he was financially able to carry out that intention simply does not constitute a waiver of his right to counsel. People v. Castile, 7 Ill. App.3d 728, 28 Ill.Dec. 259, 390 N.E.2d 426 (1979). Just as certainly, even had a valid initial determination of non-indigency been made, that early determination does not, without repeated inquiry, constitute a waiver of the right to counsel at later stages when the defendant appears without counsel. Fla.R.Crim.P. 3.111(d)(5); Machwart v. State, 222 So.2d 38 (Fla. 2d DCA 1969). See R.V.P. v. State, 395 So.2d 291 (Fla. 5th DCA 1981). Accord, State v. Adams, 369 So.2d 1327 (La. 1979); State v. Lande, 589 P.2d 666 (Mont. 1979); State v. Moore, 203 Neb. 94, 277 N.W.2d 554 (1979).
The only moment during the entirety of these proceedings when any inquiry into Castro's financial ability to employ counsel was made was when Castro appeared before the magistrate on the burglary charge. It is clear that this inquiry fell short of satisfying the guidelines for determining indigency found in Section 27.52(2), Florida Statutes (1979), and even shorter of the constitutional right to counsel. Even if the prima facie evidence of solvency arose from the fact that the defendant's stated gross income exceeded $75 per week (assuming, arguendo, that the defendant had no dependents),[6] there is not the slightest indication that the court considered, as mandated by Section 27.52(2)(c), Florida Statutes (1979), the additional circumstances of:
"1. The probable expense and burden of defending the case;
... .
"3. The amount of debts owed by defendant or debts that might be incurred by the defendant because of illness or other misfortunes within his family."
The obvious design of the statute is to effectuate the constitutional right to counsel. Statutes providing benefits to insolvent parties are to be liberally construed. Loy v. State, 74 So.2d 650 (Fla. 1954); Keur v. State, 160 So.2d 546 (Fla.2d DCA 1964); Brizzie v. State, 120 So.2d 27 (Fla.2d DCA 1960). See Hooks v. State, 253 So.2d 424 (Fla.), cert. denied, 405 U.S. 1044, 92 S.Ct. 1330, 31 L.Ed.2d 587 (1971). Were we to read the statute, as it apparently was read by the magistrate and the trial court, as creating conclusive presumptions of non-indigency where a defendant is released on bail in the amount of $1,500 or more, has a gross income in excess of $75 a week (or certain higher amounts with dependents), or owns cash in excess of $300, the statute would be constitutionally infirm.[7] A determination of non-indigency must be made on as complete a financial picture as possible, Sapio v. State, 223 So.2d 759 (Fla.3d DCA 1969); People v. Castile, supra; State v. *639 Lande, supra, and essential to this determination for the purpose of the right to counsel is the cost of available counsel. Sapio v. State, supra; State v. Lande, supra.
Finally, we note that the burden is not, as the State suggests, on a counselless accused to initiate proceedings for the appointment of counsel by the filing of the affidavit called for by Section 27.52, Florida Statutes (1979). Billions v. State, 399 So.2d 1086 (Fla. 1st DCA 1981); Fla.R.Crim.P. 3.111(d)(1). See Kitchens v. Smith, 401 U.S. 847, 91 S.Ct. 1089, 28 L.Ed.2d 519 (1971) (right to counsel not dependent on request). The statutory affidavit need only be filed at the trial court's request after it has first advised the accused of his right to appointed counsel if he is financially unable to employ counsel.
Thus, it is the trial court's continuing responsibility to determine that a defendant who is not represented by counsel at any critical stage of a criminal proceeding is financially able to employ counsel; that determination can only be made after a full and complete inquiry concerning the defendant's financial circumstances, taking into account the cost of obtaining counsel in respect to the particular case; and the prima facie evidence of non-indigency set forth in Section 27.52, Florida Statutes (1979), cannot by itself be employed to deny court-appointed counsel to an accused.
Reversed and remanded for new trials.
JORGENSON, J., concurs in the result only.
NOTES
[1] This "ruling," which referred Castro to a program sponsored by the Dade County Bar Association designed to provide counsel at a low cost to non-indigents, is, of course, a refusal to appoint counsel.
[2] The concurrence in Washington v. State (Fla.3d DCA 1981) (Case Nos. 78-706 and 79-24, opinion filed August 4, 1981), is based on the view that a presumption of regularity arises from a written waiver and is sufficient to show that jury was properly waived where the propriety of the waiver is uncontradicted. Here that is not the case. See also Durcan v. State, 383 So.2d 248, 249 (Fla.3d DCA 1980) (Baskin, J., dissenting).
[3] Cases approving questionable jury trial waivers where the defendant is represented by counsel, see, e.g., Durcan v. State, supra; Quartz v. State, 258 So.2d 283 (Fla.3d DCA 1972), are, of course, inapposite. But see Viggiani v. State, supra; Tosta v. State, supra, where despite the presence of counsel, the court held the waiver of jury trial invalid as not shown to be knowingly and intelligently made.
[4] The court remarked: "That is almost twice the statute. The statute says 75. I think 75 is unrealistic, but 140 is a different ballgame." Section 27.52(2)(b) 2, Florida Statutes (1979), applicable here, provided, "If the defendant has no dependents and his gross income exceeds $75 per week," the defendant is "prima facie" non-indigent. See n. 6, infra. In 1980, this amount was increased to $100. § 27.52, Fla. Stat. (Supp. 1980).
[5] It is apparent that the court construed Castro's earlier statement that he did not have sufficient money to procure a low-cost attorney to mean that although he had the funds, he did not want to spend them. The court's impression represents the seminal thought in the court's ultimate and unfounded conclusion that the defendant adamantly insisted upon representing himself despite the court's offer to appoint a Public Defender. Indeed, the court, by the time of sentencing on March 27, 1980, was so convinced of this that when it finally appointed the Public Defender to represent Castro on appeal, it made Castro promise that he would not discharge the Public Defender as he had done in the past.
[6] "(2)(a) In proceedings for the determination of insolvency, there shall be a presumption of solvency, and the defendant shall have the burden of rebutting the presumption by competent proof.

"(b) The following shall be prima facie evidence of solvency:
"1. The defendant has been released on bail in the amount of $1500 or more.
"2. The defendant has no dependents and his gross income exceeds $75 per week; the income limit shall be increased by $10 per week for each of the first two dependents of the defendant and by $5 per week for each dependent beyond the first two.
"3. The defendant owns cash in excess of $300."
[7] Even a rebuttable presumption of non-indigency based on these findings may be so irrational as to be constitutionally invalid. See Gregory v. State, 405 So.2d 785 (Fla. 4th DCA 1981) (Beranek, J., concurring specially, "to point out that inflation has taken its toll on the numbers placed in the statute..."). We need not address this question here.