360 So.2d 831 (1978)
STATE of Louisiana, Appellee,
v.
WRESTLE, INC. and Daniel W. Burch, Appellants.
No. 61342.
Supreme Court of Louisiana.
June 19, 1978.
*833 Jack C. Peebles, Metairie, for appellants.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., William L. Brockman, Asst. Dist. Atty., for appellee.
TATE, Justice.
The principal issues raised by the defendants' appeal concern: I. The constitutionality of the obscenity statute under our state constitution (Assignment 1); II. The alleged lack of proof that the defendant Burch, a corporate officer, had knowledge (scienter) of the contents, nature, or character of the obscene films exhibited on premises operated by the corporation (Assignment 4); and III. The denial of the defendant Burch's federal constitutional right to trial by jury through the determination of his guilt by the verdict of a non-unanimous (5-1) verdict of the six-person jury.
The defendants, Wrestle, Inc. and Daniel W. Burch, its president, were jointly charged in two counts with exhibition and display of obscene hard-core sexual conduct. La.R.S. 14:106. The six-person jury unanimously convicted Wrestle, Inc. and, by vote of 5-1, likewise convicted the defendant Burch of both counts.[1]
The defendants are charged with the exhibition and display of two obscene motion pictures. The evidence shows that these films were exhibited in booths (peep shows) at Mid-Town News, premises operated by the corporate defendant. The films were located in small booths in a rear room of the store, in which were situated coin operated projectors. By insertion of a quarter, these permitted viewing through its projection a portion of the film onto a small viewing screen.
I. Constitutionality
By their motion to quash the informations, the defendants charge that La.R.S. 14:106 is unconstitutional as vague, arbitrary, and overbroad.[2] Specifically, the defendants contend that the indictment founded on the statute does not, as required by our state constitution, adequately inform the accused of the nature and cause of the accusation against him. La.Const. of 1974, Art. 1, Section 13.
*834 The defendants are charged with exhibiting obscene material. La.R.S. 14:106(A)(3)[3] defines "obscene material" as a tangible work or thing which displays "hard-core sexual conduct"[4] depicted "in a patently offensive way", "which the trier of fact determines that the average person applying contemporary community standards would find, . . . taken as a whole, appeals to the prurient interest."
The defendants suggest that the following phrases of the definition are sufficiently indefinite as to render the statute unconstitutional: "Contemporary community standards," "prurient interest," and "patently offensive." They argue that, to give the jury such a set of variables but without providing adequate objective criteria for determining the content of the variables, simply passes on to the jury what should be a legislative function.
In short, the defendants rely upon jurisprudential expressions that, under our state constitution, a person cannot be subject to criminal prosecution for any act unless that act has first been denounced with sufficient legislative precision that the person sought to be held accountable will know that his conduct falls within the prohibition of the statute.
The legislation defines hard-core sexual conduct, an essential element of the crime, in concrete and specific terms. La.R.S. 14:106(A), quoted in footnote 4 above. By this definition, the potential offender is informed with specificity of the type of conduct which subjects him to criminal penalty.
Additionally, however, the trier of fact is obliged to determine whether such explicitly defined sexual portrayal is depicted "in a patently offensive manner" and that the average person "applying contemporary community standards" would find that the work as a whole "appeals to the prurient interest."[5] The purpose of the community standards test, first enunciated in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), was to emphasize the need for an external standard, as compared with the trier of fact's personal views of decency, and to prevent the evaluation of obscenity being based on whether the material had an adverse effect on any particularly susceptible subclass of the community. 354 U.S. 488-91, 77 S.Ct. 1311-12. See Schauer, The Law of Obscenity 117 (1976).
*835 This standard for the factual determination of criminal conduct is thus essentially designed to protect an accused against conviction for exhibition of what otherwise falls within the explicit statutory definition of hard-core pornography. As stated in another context in Hamling v. United States, 418 U.S. 87, 104-05, 94 S.Ct. 2887, 2901, 41 L.Ed.2d 590 (1974), the trier of fact is by this standard only "entitled to draw on his own knowledge of the views of the average person in the community or vicinage from which he comes for making the required determination, just as he is entitled to draw on his knowledge of the propensities of a `reasonable' person in other areas of the law."
The Louisiana obscenity statute, in the portions quoted in this opinion (see footnotes 3, 4), clearly complies with the federal constitutional requirements of regulating only specifically defined sexual conduct, limited to works which, taken as whole, appeal to the prurient interest in sex, which portray this conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value. Miller v. California, 413 U.S. 15, 25, 93 S.Ct. 2607, 2614-15, 37 L.Ed.2d 419 (1973). (Likewise, our statutory guidelines for the trier of fact comply with the federal constitutional standard for factual determination of obscenity, including by the use of contemporary community standards. Id.)
As Miller notes, compliance of a state statute with these constitutional prerequisites "will provide fair notice to a dealer in such materials that his public and commercial activities may bring prosecution." 413 U.S. 28, 93 S.Ct. 2616-17. We are satisfied that such notice not only satisfies federal due process and First Amendment requirements but also similar notice requirements of our state constitution.
We therefore reject the defendant's contention that the statute does not adequately inform the accused of the conduct proscribed by it.
The defendant further contends that the community standard for determination of obscenity leaves protection of constitutional freedom of expression to the whim of each jury. In this regard, Miller states: "If a state law that regulates obscene material is thus limited . . . [as is Louisiana's], the First Amendment values . . . are adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary." 413 U.S. 25, 93 S.Ct. 2615.
We have recognized our duty to conduct an independent constitutional review in the appellate court of constitutional claims. State v. Amato, 343 So.2d 698, 703-04 (La.1977). As we stated in State v. Luck, 353 So.2d 225, 230 (La.1977): "* * * the trial court's determination that material is or is not obscene presents an issue of law fully reviewable by this court. Even the factual determination of obscenity by a trial jury must be subject to full appellate review to meet constitutional standards designed to effectuate freedom of expression. Jenkins v. Georgia, 418 U.S. 153, 94 S.Ct. 2750, 41 L.Ed.2d 642 (1974."
The trial court properly overruled the defendants' motion to quash the indictment.[6] We find no merit to this assignment of error.
II. "Scienter"
In his motion for a new trial, the defendant Burch contended, inter alia, that there was no evidence that he had knowledge of the contents, character, or nature of the obscene films exhibited by the corporation *836 co-defendant. Burch was the president of the corporation.
Determination of guilt of obscenity constitutionally requires proof of scienter or knowledge. Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959). As the decision indicates, this proof may be circumstantial. The state need not, however, show the defendant knew the legal status of the materials to be obscene; it is sufficient that, under the statute, the state be required to show that the accused had knowledge of or had reason to know of the character and nature of the contents of the materials for distribution or exhibition of which he was responsible. Hamling v. United States, 418 U.S. 87, 119-25, 94 S.Ct. 2887, 2908-11 (1974); Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968); Mishkin v. New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966); Schauer, The Law of Obscenity 222-26 (1976).
The trial judge therefore instructed the jury that the evidence must show beyond a reasonable doubt "that the defendants had knowledge of the character and content of the motion picture at the time that the defendants possessed, exhibited, and displayed the material." The trial judge further instructed the jury: "* * * when you are considering whether the defendant had guilty knowledge, you are to consider whether he personally knew, not whether some person allegedly acting for him knew about it, nor whether some associate knew about it. In this kind of case, whatever may be the rules of agency in civil matters, individuals are to be charged on the basis of the personalized individual knowledge only."
Thus instructed, the jury found (5-1) the defendant Burch guilty of both counts.
The evidence shows: The defendant Burch was the president of the corporation which operated the store. It was a local corporation, and Burch lived in the locality. In the back of the store was a small room with twelve coin-operated viewing machines.
Burch was seen in the store by a police officer on at least one of his visits to it. A defense witness saw Burch on the premises some six months before, building the booths for the peep shows in which the obscene films were exhibited. The films last from eight to ten minutes, and quarters must be inserted periodically, costing from three to four dollars to see a film in its entirety.
As summarized in State v. Lindinger, 357 So.2d 500 (La.1978): Sufficiency of the evidence is a factual matter not reviewable on appeal. The reviewing court may reverse only if there is no evidence to prove the crime or an element of it. In determining whether the circumstantial evidence constitutes some evidence of the crime, the reviewing court must determine whether there is some evidence from which, if accepted by the jury, it could reasonably conclude beyond a reasonable doubt that it excluded every other reasonable hypothesis, as required by La.R.S. 15:438, than the essential element sought to be proved (here, that the accused Burch knew or had reason to know of the nature and character of the films exhibited by his corporation). See also State v. Schwander, 345 So.2d 1173 (La.1977).
Assayed by this test, some evidence was introduced by which the jury could reasonably conclude beyond a reasonable doubt that the resident president of this local corporation (who had actually participated in building the booths apparently intended for the sole purpose of exhibiting pornographic films) had knowledge or reason to know of the nature and character of the films exhibited therein. Although the issue is close, we are unable to hold that this assignment presents reversible merit.
III. Non-unanimous Six-person Jury
By brief and argument in this court, the defendants for the first time contend that Louisiana law, which permits conviction by a non-unanimous six-person jury, offends the right of persons criminally accused of non-petty offenses to the jury trial guaranteed them by the Sixth and Fourteenth *837 Amendments to the United States Constitution.[7]
The defendants base their contention upon Ballew v. Georgia, 435 U.S. 223, 98 S.Ct. 1029, 55 L.Ed.2d 234 (1978). This decision held that trial before a five-person jury offends federal constitutional rights, even though a unanimous verdict is required.
Initially, we are given concern because the alleged error was not raised by objection in the trial court at the time of the jury trial, La.C.Cr.P. art. 841, nor assigned as error, La.C.Cr.P. art. 920. It thus cannot be the subject of appellate review unless the error "is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." La.C.Cr.P. art. 920(2).
Historically, our jurisprudence does not permit inspection of the trial transcript to ascertain such errors, see State v. Craddock, 307 So.2d 342 (La.1975), but only of the pleadings and proceedings alone considered part of the record for purposes of patent-error appellate reviewin general, the indictment or information, the minutes, and the verdict and sentence.[8]
In this case, the minute entry shows that, after the jury brought in verdicts convicting both defendants of both counts, the jury was polled and had found the defendant Burch guilty by a vote of 5-1. Although the matter is not free from doubt[9], we have held without discussion that under such circumstances we may, from the minute entry, discover by mere inspection the basis for a defendant's contention that a non-unanimous jury verdict represents constitutional error patent on the face of the proceedings. State v. Bradford, 268 So.2d 781 (La.1974); State v. Biagas, 260 La. 69, 255 So.2d 77 (La.1971).
We therefore consider on its merits the contention of the unconstitutionality of a non-unanimous verdict by a six-person jury.
*838 In Williams v. Florida, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), the United States Supreme Court upheld the constitutionality of the six-person jury in a state criminal trial. The court seemed to express its approval of the retention of unanimity on the six-person jury, but it did not decide the question of whether unanimity is an indispensable element of the Sixth Amendment guarantee to trial by jury.
The question of unanimity of a jury verdict was raised in Johnson v. Louisiana, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972). The court there held that Louisiana's twelve-person jury, wherein nine persons (before the 1974 state constitution raised the requirement to ten) must concur to reach a verdict in order to subject a defendant to punishment necessarily at hard labor, did not violate the defendant's right to due process or equal protection.[10]
The 1974 Louisiana constitution provides for a jury of six for lesser felonies, five of whom must concur to render a verdict. Article 1, Section 17. This changed the prior state constitution's provision for a jury of five in such instances, with a requirement of a unanimous verdict (similar to the Georgia jury provision invalidated earlier this year by the United States Supreme Court in Ballew).
In his commentary upon the 1974 provision, Professor Lee Hargrave, Coordinator of Research for the constitutional convention, expressed the view that this change to non-unanimity did not offend the federal constitution: "If 75 percent concurrence (9/12) was enough for a verdict as determined in Johnson v. Louisiana, 406 U.S. 356, [92 S.Ct. 1620, 32 L.Ed.2d 152] (1972), then requiring 83 percent concurrence (5/6) ought to be within the permissible limits of Johnson." Hargrave, The Declaration of Rights of the Louisiana Constitution of 1974, 35 La.L.Rev. 1, 56 (fn. 300) (1974).
We accept this view as still valid, despite the recent decision in Ballew v. Georgia, 435 U.S. 223, 98 S.Ct. 1029, 55 L.Ed.2d 234 (1978). Ballew rejected Georgia's contention that the retention of the unanimity requirement in its five-person jury satisfied the requirements of the federal constitution's guarantee of the right to trial by jury for a criminally accused through the Sixth and Fourteenth Amendments.
In doing so, the court stated: "Our concern has to do with the ability of the smaller group to perform the functions mandated by the Amendments. That a five-person jury may return a unanimous decision does not speak to the questions whether the group engaged in meaningful deliberation, could remember all the important facts and arguments, and truly represented the common sense of the entire community." 98 S.Ct. at 1039-40.
Earlier, in Williams, the court had held that a six -person jury was of sufficient size to promote adequate group deliberation, to insulate members from outside intimidation, and to provide a representative cross-section of the community. These values, which Ballew held a five-person jury is inadequate to serve, are not necessarily defeated because the six-person jury's verdict may be rendered by five instead of by six persons.
The six-person jury will still presumably engage in the longer deliberations involving more communication that the court found adequately enhances greater verdict reliability and better community representation, despite (see Johnson) the elimination of the requirement for unanimity in verdict. Or at least this court, indulging in the presumption of federal constitutionality which must be afforded to provisions of our state constitution, so concludes as to this close issue.
We therefore do not find reversible merit to this contention.
*839 IV. Other Assignments of Error
The remaining assignments of error do not require extended discussion:
Assignment 2 concerns a non-errorneous refusal of the trial court, within its discretion, to qualify a witness as an expert entitled to give opinions as to contemporary community standards. The witness's opinion was founded mostly on his discussions with acquaintances involved in the marketing and sale of materials in adult book stores and with their customers. The witness was, however, permitted to testify fully as to the wide availability of similar materials in 25 outer outlets in the community, a matter concerning facts within his knowledge. La.R.S. 15:463, 467
Assignment 3 concerns a non-meritorious technical and narrow objection to the trial court's instructions relative to the definition of "prurient interest".
Assignment 4 objects to the sentencing of both defendants to two consecutive sentences on both counts of the two count information. The information concerned two separate offenses (showing of two different obscene films); joinder of the separate offenses is permissible under La.C. Cr.P. art. 493 as amended in 1975. The jurisprudence concerning the issue prior to the 1975 amendment is inapplicable. See, e. g., State v. Todd, 278 So.2d 36 (La.1973).[11]

Decree
Accordingly, since we find no merit to the defendant's contentions, we affirm the convictions and sentences.
AFFIRMED.
NOTES
[1] Burch was sentenced to serve two consecutive seven month terms in parish prison, suspended, and placed on inactive probation for two years for each count, to be served concurrently; a condition of the probation was that he pay $1,000 to the judicial expense fund. Wrestle, Inc., was sentenced to pay a fine of $600 on each count.
[2] We have previously rejected contentions that the statute offends federal constitutional standards in these regards. State v. Amato, 343 So.2d 698 (La.1977).
[3] The full definition in this statutory provision is as follows:

"Obscene material is any tangible work or thing which the trier of fact determines (a) that the average person applying contemporary community standards would find, taken as a whole, appeals to the prurient interest, and (b) depicts or describes in a patently offensive way, hard core sexual conduct specifically defined in Paragraph (2) above, and (c) the work or thing taken as a whole lacks serious literary, artistic, political, or scientific value."
Similar tests are set forth for the presentation, exhibition, or display of hard-core sexual conduct. La.R.S. 14:106(A)(2).
[4] The statutory definition in La.R.S. 14:106(A)(2) is as follows:

"* * * Hard core sexual conduct is the public portrayal, for its own sake, and for ensuing commercial gain of:
(a) Ultimate sexual acts, normal or perverted, actual, simulated or animated, whether between human beings, animals or an animal and a human being; or
(b) Masturbation, excretory functions or lewd exhibition, actual, simulated or animated, of the genitals, pubic hair, anus, vulva, or female breast nipples; or
(c) Sadomasochistic abuse, meaning actual, simulated or animated, flagellation, or torture by or upon a person who is nude or clad in undergarments or in a costume which reveals the pubic hair, anus, vulva, genitals, or female breast nipples, or in the condition of being fettered, bound, or otherwise physically restrained, on the part of one so clothed; or
(d) Actual, simulated, or animated, touching, caressing, or fondling of, or other similar physical contact with, a pubic area, anus, female breast nipple, covered or exposed, whether alone or between human, animals, or a human and an animal, of the same or opposite sex, in an act of apparent sexual stimulation or gratification; or
(e) Actual, simulated, or animated stimulation of a human genital organ by any device whether or not the device is designed, manufactured, or marketed for such purpose."
[5] There must also be a public portrayal for its own sake and for commercial gain of hard-core pornography in order to subject the offender to criminal penalties. La.R.S. 14:106(A)(2). Further, the work taken as a whole must lack "serious literary, artistic, or political value." La.R.S. 14:106(A)(2), (3).
[6] We do not regard as substantial the defendant Burch's further contention that the statute unconstitutionally denies him equal protection of the laws because he, as a corporate officer, is subjected to criminal liability for obscene films exhibited, whereas (see La.R.S. 14:106(C) exempted from criminal responsibility is a non-managerial corporate employee without financial interest in the exhibit. Without discussion of the obvious reasons, we conclude that there is a rational basis for such differentiation reasonably related to a valid governmental purpose, unlike the unconstitutional (irrational) differentiation in State v. Johnson, 343 So.2d 705 (La.1977) between one class of employees and another.
[7] The right of a defendant in a criminal proceeding to a trial by jury guaranteed by the Sixth Amendment was held to be applicable to state criminal proceedings by virtue of the Fourteenth Amendment in Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).
[8] In State v. Sanford, 248 La. 630, 181 So.2d 50 (1965) we summarized the jurisprudence as holding that the record of the pleadings and proceedings, for purposes of determining patent error, "includes the caption in the case, a statement of time and place of holding the court, the indictment or information with the endorsement, the arraignment, the plea of the accused, mention of the impaneling of the jury, verdict, and judgment of the court." 181 So.2d 51.
[9] The essential basis for the defendants' contention is their attack on the constitutionality, under the federal constitution, of the provisions of state law which permit a non-unanimous verdict in six-person juries: La.Const. of 1974, Art. 1, Section 17; La.C.Cr.P. art. 782.

On the one hand, some jurisprudence provides that the grounds of unconstitutionality must first be asserted in the trial court. State v. Campbell, 263 La. 1058, 270 So.2d 506 (1973); State v. Kavanaugh, 203 La. 1, 13 So.2d 366 (1943); City of Shreveport v. Pedro, 170 La. 351, 127 So. 865 (1930). On the other hand, the unconstitutionality of a statute on which a conviction is based may be noticed as patent error. State v. Stewart, 325 So.2d 828 (La.1976). Yet, if a defendant withdraws in the trial court his attack upon the constitutionality of such a statute, his waiver precludes appellate review of (what under Stewart is patent constitutional) error in this regard. State v. Jones, 347 So.2d 200 (La.1977).
We make no effort here to reconcile these conflicting principles enunciated by our jurisprudence. Arguably, although a non-curable attack upon the substantive statute upon which a conviction is based may be noticed at any time, a procedural deficiency (such as the alleged statutory provision for a nonunanimous jury verdict) should be raised in the trial court by appropriate motion or request for instructions, so as to enable the trial court to cure the deficiency; or else is waived. La.C.Cr.P. art. 841.
Nevertheless, in view of the uncertainty of the jurisprudence, and because the constitutional error (if any) is based on a United States Supreme Court decision decided subsequent to the present conviction and is revealed by the minutes, we deem it to be appropriate here to consider the alleged constitutional error first raised in this court, without attempting at this time to resolve the conflicting jurisprudential principles as to whether or not the allegation represents unwaived patent error discoverable by mere inspection of the pleadings and proceedings.
[10] This court has previously held that La.C.Cr.P. art. 782's provision for non-unanimous verdicts of twelve-person juries does not offend equal protection or due process of the federal or state constitution (State v. Ledet, 337 So.2d 1126 (La.1976); State v. Ross, 320 So.2d 177 (La.1975); State v. Bradford, 298 So.2d 781 (La.1974); State v. Blackwell, 298 So.2d 798 (La.1974) or a defendant's right to be presumed innocent until found guilty beyond a reasonable doubt. State v. Ledet, supra.
[11] On appeal, the defendant does not complain, as he did at the time of sentence, that a condition of his probation was to pay $1,000 to the Criminal Court Operations Fund. This condition of probation is now permitted by the amendment of La.C.Cr.P. art. 895.1 by Act 720 of 1977. This permits the court to impose as a condition of probation a requirement that the defendant pay "an amount of money in restitution to defray the cost of the operation of that court." Cf. State v. Rugon, 355 So.2d 877 (La.1977), invalidating under then-existing (pre-1977) legislation an apparently similar condition of probation.