# BURCH ET AL. *v.* LOUISIANA

No. 78–90.   Argued February 22, 1979—Decided April 17, 1979

REHNQUIST, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, BLACKMUN, POWELL, and STEVENS, JJ., joined. STEVENS, J., filed a concurring opinion, *post,* p. 139.   BRENNAN, J., filed

an opinion concurring in part and dissenting in part, in which Stewart and Marshall, JJ., joined, *post*, p. 140.

*Jack Peebles* argued the cause and filed a brief for petitioners.

*Louise Korns* argued the cause for respondent. With her on the brief were *William J. Guste, Jr.*, Attorney General of Louisiana, and *Harry F. Connick.**

Mr. Justice Rehnquist delivered the opinion of the Court.

The Louisiana Constitution and Code of Criminal Procedure provide that criminal cases in which the punishment imposed may be confinement for a period in excess of six months "shall be tried before a jury of six persons, five of whom must concur to render a verdict." [1] We granted certiorari to decide whether conviction by a nonunanimous six-person jury in a state criminal trial for a nonpetty offense as

---

*\*Leon Friedman* and *Bruce J. Ennis* filed a brief for the American Civil Liberties Union et al. as *amici curiae* urging reversal.

[1] Article I, § 17, of the Louisiana Constitution provides:

"A criminal case in which the punishment may be capital shall be tried before a jury of twelve persons, all of whom must concur to render a verdict. A case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict. A case in which the punishment may be confinement at hard labor or confinement without hard labor for more than six months shall be tried before a jury of six persons, five of whom must concur to render a verdict. The accused shall have a right to full voir dire examination of prospective jurors and to challenge jurors peremptorily. The number of challenges shall be fixed by law. Except in capital cases, a defendant may knowingly and intelligently waive his right to a trial by jury."

Article 779 (A), La. Code Crim. Proc. Ann. (West Supp. 1979), states:

"A defendant charged with a misdemeanor in which the punishment may be a fine in excess of five hundred dollars or imprisonment for more than six months shall be tried by a jury of six jurors, five of whom must concur to render a verdict."

contemplated by these provisions of Louisiana law violates the rights of an accused to trial by jury guaranteed by the Sixth and Fourteenth Amendments.[2]  439 U. S. 925 (1978).

Petitioners, an individual and a Louisiana corporation, were jointly charged in two counts with the exhibition of two obscene motion pictures.[3]  Pursuant to Louisiana law, they were tried before a six-person jury, which found both petitioners guilty as charged.  A poll of the jury after verdict indicated that the jury had voted unanimously to convict petitioner Wrestle, Inc.,[4] and had voted 5–1 to convict petitioner Burch. Burch was sentenced to two consecutive 7-month prison terms, which were suspended, and fined $1,000; Wrestle, Inc., was fined $600 on each count.

Petitioners appealed their convictions to the Supreme Court

---

[2] The Sixth Amendment provides:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor; and to have the Assistance of Counsel for his defense."

In *Duncan* v. *Louisiana,* 391 U. S. 145 (1968), the Court held that the right of trial by jury was a fundamental right applicable to the States by virtue of the Fourteenth Amendment.

[3] At the time of petitioners' trial, the maximum penalty prescribed for the crime of obscenity was a fine of not less than $1,000, or imprisonment in the parish prison for not more than one year, or both.  La. Rev. Stat. Ann. § 14:106 (G) (West 1974).

[4] Because Wrestle, Inc., was convicted by a unanimous six-person jury, it lacks standing to challenge the constitutionality of the provisions of Louisiana law allowing conviction by a nonunanimous six-member jury. See, *e. g., Duke Power Co.* v. *Carolina Environmental Study Group, Inc.,* 438 U. S. 59, 72 (1978); *Arlington Heights* v. *Metropolitan Housing Dev. Corp.,* 429 U. S. 252, 260–261 (1977); *United States* v. *Raines,* 362 U. S. 17, 21 (1960).  And in *Williams* v. *Florida,* 399 U. S. 78 (1970), this Court held that conviction by a unanimous six-person jury does not violate an accused's right to trial by jury.  Accordingly, Wrestle, Inc., has not been denied its constitutional right to trial by jury.

of Louisiana, where they argued that the provisions of Louisiana law permitting conviction by a nonunanimous six-member jury violated the rights of persons accused of nonpetty criminal offenses to trial by jury guaranteed by the Sixth and Fourteenth Amendments.[5] Though acknowledging that the issue was "close," the court held that conviction by a nonunanimous six-person jury did not offend the Constitution. *State* v. *Wrestle, Inc.*, 360 So. 2d 831, 838 (1978). The court concluded that none of this Court's decisions precluded use of a nonunanimous six-person jury. " 'If 75 percent concurrence ($\frac{9}{12}$) was enough for a verdict as determined in *Johnson* v. *Louisiana*, 406 U. S. 356 . . . (1972), then requiring 83 percent concurrence ($\frac{5}{6}$) ought to be within the permissible limits of *Johnson*.' " *Ibid.*, quoting Hargrave, The Declaration of Rights of the Louisiana Constitution of 1974, 35 La. L. Rev. 1, 56 n. 300 (1974). And our recent decision in *Ballew* v. *Georgia*, 435 U. S. 223 (1978), striking down a Georgia law allowing conviction by a unanimous five-person jury in nonpetty criminal cases, was distinguishable in the Louisiana Supreme Court's view:

> "[I]n *Williams* [v. *Florida*, 399 U. S. 78 (1970)] the court held that a six-person jury was of sufficient size to promote adequate group deliberation, to insulate members from outside intimidation, and to provide a representative cross-section of the community. These values, which *Ballew* held a five-person jury is inadequate to serve, are not necessarily defeated because the six-person jury's verdict may be rendered by five instead of by six persons." 360 So. 2d, at 838.

---

[5] Although petitioners did not raise the jury trial issue in the trial court, the Louisiana Supreme Court held that under state law it could consider petitioners' claim, and it disposed of that claim. *State* v. *Wrestle, Inc.*, 360 So. 2d 831, 837 (1978). The federal question therefore is properly raised in this Court. See *New Jersey* v. *Portash*, 440 U. S. 450, 455 (1979); *Jenkins* v. *Georgia*, 418 U. S. 153, 157 (1974); *Raley* v. *Ohio*, 360 U. S. 423, 436 (1959).

Since the Louisiana Supreme Court believed that conviction by a nonunanimous six-person jury was not necessarily foreclosed by this Court's decisions, it stated that it preferred to "indulg[e] in the presumption of federal constitutionality which must be afforded to provisions of our state constitution." *Ibid.*

We agree with the Louisiana Supreme Court that the question presented is a "close" one. Nonetheless, we believe that conviction by a nonunanimous six-member jury in a state criminal trial for a nonpetty offense deprives an accused of his constitutional right to trial by jury.

Only in relatively recent years has this Court had to consider the practices of the several States relating to jury size and unanimity. *Duncan* v. *Louisiana,* 391 U. S. 145 (1968), marked the beginning of our involvement with such questions. The Court in *Duncan* held that because trial by jury in "serious" criminal cases is "fundamental to the American scheme of justice" and essential to due process of law, the Fourteenth Amendment guarantees a state criminal defendant the right to a jury trial in any case which, if tried in a federal court, would require a jury under the Sixth Amendment. *Id.,* at 149, 158–159.[6]

Two Terms later in *Williams* v. *Florida,* 399 U. S. 78, 86 (1970), the Court held that this constitutional guarantee of trial by jury did not require a State to provide an accused with a jury of 12 members and that Florida did not violate

---

[6] In *Duncan* v. *Louisiana, supra,* at 159, the Court reaffirmed the long-established view that "petty offenses" may be tried without a jury, and in *Baldwin* v. *New York,* 399 U. S. 66, 69 (1970), the plurality opinion of MR. JUSTICE WHITE concluded that "no offense can be deemed 'petty' for purposes of the right to trial by jury where imprisonment for more than six months is authorized." See *Ballew* v. *Georgia,* 435 U. S. 223, 229 (1978) (opinion of BLACKMUN, J.). Because the Louisiana obscenity statute under which petitioners were charged authorized imprisonment for more than six months, see n. 3, *supra,* petitioners were entitled under the Constitution to be tried by a jury.

the jury trial rights of criminal defendants charged with nonpetty offenses by affording them jury panels comprised of only 6 persons. After canvassing the common-law development of the jury and the constitutional history of the jury trial right, the Court concluded that the 12-person requirement was "a historical accident" and that there was no indication that the Framers intended to preserve in the Constitution the features of the jury system as it existed at common law. *Id.*, at 89–90. Thus freed from strictly historical considerations, the Court turned to examine the function that this particular feature performs and its relation to the purposes of jury trial. *Id.*, at 99–100. The purpose of trial by jury, as noted in *Duncan,* is to prevent government oppression by providing a "safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge." 391 U. S., at 156. Given this purpose, the *Williams* Court observed that the jury's essential feature lies in the "interposition between the accused and his accuser of the commonsense judgment of a group of laymen, and in the community participation and shared responsibility that results from that group's determination of guilt or innocence." 399 U. S., at 100. These purposes could be fulfilled, the Court believed, so long as the jury was of a sufficient size to promote group deliberation, free from outside intimidation, and to provide a fair possibility that a cross section of the community would be represented on it. *Ibid.* The Court concluded, however, that there is "little reason to think that these goals are in any meaningful sense less likely to be achieved when the jury numbers six, than when it numbers 12—*particularly if the requirement of unanimity is retained." Ibid.* (emphasis added).[7]

---

[7] The Court also believed that a jury of 12 was neither more reliable as a factfinder, more advantageous to the defendant, nor more representative of the variety of viewpoints in the community than a jury of 6. 399 U. S., at 100–102.

A similar analysis led us to conclude in 1972 that a jury's verdict need not be unanimous to satisfy constitutional requirements, even though unanimity had been the rule at common law. Thus, in *Apodaca* v. *Oregon,* 406 U. S. 404 (1972), we upheld a state statute providing that only 10 members of a 12-person jury need concur to render a verdict in certain noncapital cases.[8] In terms of the role of the jury as a safeguard against oppression, the plurality opinion perceived no difference between those juries required to act unanimously and those permitted to act by votes of 10 to 2. 406 U. S., at 411. Nor was unanimity viewed by the plurality as contributing materially to the exercise of the jury's common-sense judgment or as a necessary precondition to effective application of the requirement that jury panels represent a fair cross section of the community. *Id.,* at 410, 412.[9]

Last Term, in *Ballew* v. *Georgia,* 435 U. S. 223 (1978), we considered whether a jury of less than six members passes constitutional scrutiny, a question that was explicitly reserved in *Williams* v. *Florida.* See 399 U. S., at 91 n. 28. The Court, in separate opinions, held that conviction by a unanimous five-person jury in a trial for a nonpetty offense deprives an accused of his right to trial by jury. While readily

---

[8] *Johnson* v. *Louisiana,* 406 U. S. 356 (1972), was decided the same day as *Apodaca* v. *Oregon* and held that conviction by a 9-3 verdict in certain noncapital cases did not violate the Due Process Clause for failure to satisfy the reasonable-doubt standard. Unlike *Apodaca, Johnson* involved a trial held prior to *Duncan* v. *Louisiana,* 391 U. S. 145 (1968), which the Court in *DeStefano* v. *Woods,* 392 U. S. 631 (1968), held was not to be applied retroactively, and therefore did not implicate the Sixth Amendment as applied to the States through the Fourteenth. 406 U. S., at 358.

[9] MR. JUSTICE POWELL concurred in the judgment in *Apodaca* v. *Oregon,* 406 U. S., at 366. He concluded that although Sixth Amendment history and precedent required jury unanimity in federal trials, the Due Process Clause of the Fourteenth Amendment does not incorporate all the elements of a jury trial required by the Sixth Amendment and does not prevent Oregon from permitting conviction by a verdict of 10-2. *Id.,* at 369-380.

admitting that the line between six members and five was not altogether easy to justify, at least five Members of the Court believed that reducing a jury to five persons in nonpetty cases raised sufficiently substantial doubts as to the fairness of the proceeding and proper functioning of the jury to warrant drawing the line at six. See 435 U. S., at 239 (opinion of BLACKMUN, J.); *id.*, at 245–246 (opinion of POWELL, J.).[10]

We thus have held that the Constitution permits juries of less than 12 members, but that it requires at least 6. *Ballew* v. *Georgia, supra; William* v. *Florida, supra.* And we have approved the use of certain nonunanimous verdicts in cases involving 12-person juries. *Apodaca* v. *Oregon, supra* (10–2); *Johnson* v. *Louisiana,* 406 U. S. 356 (1972) (9–3). These principles are not questioned here. Rather, this case lies at the intersection of our decisions concerning jury size and unanimity. As in *Ballew,* we do not pretend the ability to discern *a priori* a bright line below which the number of jurors participating in the trial or in the verdict would not permit the jury to function in the manner required by our prior cases. 435 U. S., at 231–232 (opinion of BLACKMUN, J.); *id.*, at 245–246 (opinion of POWELL, J.); see *Williams* v. *Florida, supra,* at 100. But having already departed from the strictly historical requirements of jury trial, it is inevitable that lines must be drawn somewhere if the substance of the jury trial right is to be preserved. Cf. *Scott* v. *Illinois,* 440 U. S. 367, 372 (1979); *Baldwin* v. *New York,* 399 U. S. 66, 72–73 (1970) (plurality opinion); *Duncan* v. *Louisiana,* 391 U. S., at 161. Even the State concedes as much. Tr. of Oral Arg. 26–27.

---

[10] MR. JUSTICE WHITE concurred in the judgment on the ground that a jury of fewer than six persons would not satisfy the fair-cross-section requirement of the Sixth and Fourteenth Amendments. *Ballew* v. *Georgia,* 435 U. S., at 245. See also *id.*, at 246 (opinion of BRENNAN, J., joining opinion of BLACKMUN, J., insofar as it holds that the Sixth and Fourteenth Amendments require juries in criminal trials to contain more than five persons).

This line-drawing process, "although essential, cannot be wholly satisfactory, for it requires attaching different consequences to events which, when they lie near the line, actually differ very little." *Duncan* v. *Louisiana, supra,* at 161; see *Baldwin* v. *New York, supra,* at 72–73 (plurality opinion). However, much the same reasons that led us in *Ballew* to decide that use of a five-member jury threatened the fairness of the proceeding and the proper role of the jury, lead us to conclude now that conviction for a nonpetty offense by only five members of a six-person jury presents a similar threat to preservation of the substance of the jury trial guarantee and justifies our requiring verdicts rendered by six-person juries to be unanimous.[11] We are buttressed in this view by the current jury practices of the several States. It appears that of those States that utilize six-member juries in trials of nonpetty offenses, only two, including Louisiana, also allow nonunanimous verdicts.[12] We think that this near-uniform judgment of the Nation provides a useful guide in delimiting the line between those jury practices that are constitutionally permissible and those that are not. See *Baldwin* v. *New York, supra,* at 70–72 (plurality opinion); *Duncan* v. *Louisiana, supra,* at 161; *District of Columbia* v. *Clawans,* 300 U. S. 617, 628 (1937).

The State seeks to justify its use of nonunanimous six-

---

[11] We, of course, intimate no view as to the constitutionality of nonunanimous verdicts rendered by juries comprised of more than six members.

[12] Of the 25 States that apparently allow six-person juries in the trials of at least some nonpetty cases, only Louisiana and Oklahoma appear to permit a verdict to be rendered by a less than unanimous jury. See La. Const., Art. I, § 17; La. Code Crim. Proc. Ann., Art. 779 (A) (West Supp. 1979); Okla. Const., Art. 2, § 19; Okla. Stat., Tit. 22, § 601 (1971); *Houchin* v. *State,* 97 Okla. Cr. 268, 262 P. 2d 173 (1953); *Pierce* v. *State,* 96 Okla. Cr. 76, 248 P. 2d 633 (1952). The Constitution of the State of Idaho allows, but does not require, nonunanimous six-person juries in certain circumstances; however, the Idaho criminal rules appear to require verdicts of six-person juries to be unanimous. See Idaho Const., Art. I, § 7; Idaho Rule Crim. Proc. 31 (a).

person juries on the basis of the "considerable time" savings that it claims results from trying cases in this manner. It asserts that under its system, juror deliberation time is shortened and the number of hung juries is reduced. Brief for Respondent 14. Undoubtedly, the State has a substantial interest in reducing the time and expense associated with the administration of its system of criminal justice. But that interest cannot prevail here. First, on this record, any benefits that might accrue by allowing five members of a six-person jury to render a verdict, as compared with requiring unanimity of a six-member jury, are speculative, at best. More importantly, we think that when a State has reduced the size of its juries to the minimum number of jurors permitted by the Constitution, the additional authorization of nonunanimous verdicts by such juries sufficiently threatens the constitutional principles that led to the establishment of the size threshold that any countervailing interest of the State should yield.

The judgment of the Louisiana Supreme Court affirming the conviction of petitioner Burch is, therefore, reversed, and its judgment affirming the conviction of petitioner Wrestle, Inc., is affirmed. The case is remanded to the Louisiana Supreme Court for proceedings not inconsistent with this opinion.

*It is so ordered.*

MR. JUSTICE STEVENS, concurring.

Even though I have not changed the views I expressed in *Marks* v. *United States,* 430 U. S. 188, 198; *Smith* v. *United States,* 431 U. S. 291, 311–321; and *Splawn* v. *California,* 431 U. S. 595, 602–605, I do not believe that I have the authority to vote to modify the judgment below on a ground not fairly subsumed within the question presented by the petition for certiorari.* That question is whether conviction by a non-

---

*See this Court's Rule 23 (1)(c) ("Only the questions set forth in the petition or fairly comprised therein will be considered by the court");

unanimous six-person jury of a nonpetty offense violates the Sixth and Fourteenth Amendments. Because this is the only question addressed by the Court and because I agree with the Court's resolution of this question, I join its opinion.

MR. JUSTICE BRENNAN, with whom MR. JUSTICE STEWART and MR. JUSTICE MARSHALL join, concurring in part and dissenting in part.

For the reasons set forth in *Johnson* v. *Louisiana,* 406 U. S. 356, 380 (Douglas, J., dissenting), 395 (BRENNAN, J., dissenting), 397 (STEWART, J., dissenting), 399 (MARSHALL, J., dissenting) (1972), and *Apodaca* v. *Oregon,* 406 U. S. 404, 414 (1972) (STEWART, J., dissenting), I agree that petitioner Burch's criminal conviction by a nonunanimous jury verdict must be reversed as a violation of his right to jury trial guaranteed by the Sixth and Fourteenth Amendments. However, I dissent from the Court's disposition insofar as it authorizes a retrial of petitioner Burch and affirms the conviction of petitioner Wrestle, Inc. Petitioners were convicted on charges of exhibiting allegedly obscene motion pictures in violation of La. Rev. Stat. Ann. § 14:106 (A)(3) (West 1974). That statute in my view is overbroad and therefore facially unconstitutional. See *Paris Adult Theatre I* v. *Slaton,* 413 U. S. 49, 73 (1973) (BRENNAN, J., dissenting). Accordingly, I would reverse the convictions of both petitioners and declare that the unconstitutionality of the statute precludes a constitutional conviction of either for its alleged violation. See *Ballew* v. *Georgia,* 435 U. S. 223, 246 (1978) (opinion of BRENNAN, J.).

---

*Mazer* v. *Stein,* 347 U. S. 201, 208, and n. 6; *General Talking Pictures Corp.* v. *Western Electric Co.,* 304 U. S. 175, 177–179.