**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 92-5703
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JESSE AGUIRRE, SR.,

Defendant-Appellant.

Appeals from the United States District Court
for the Western District of Texas

(June 7, 1993)

Before POLITZ, Chief Judge, GARWOOD and SMITH, Circuit Judges.

POLITZ, Chief Judge:

Jesse Aguirre, Sr., convicted upon his guilty plea of possession with intent to distribute in excess of 100 grams of heroin in violation of 21 U.S.C. § 841(a)(1), appeals the sentence imposed. Finding no error, we affirm.

Background

On March 4, 1992, authorities arrested Aguirre in possession of approximately eight ounces of heroin. He was indicted for possession of in excess of 100 grams of heroin with intent to

distribute, in violation of 21 U.S.C. § 841(a)(1). Invoking 21 U.S.C. § 851, the government supplemented the indictment with an enhancement information, alleging a 1976 Texas heroin distribution conviction which became final in 1985. Aguirre moved to quash the information, contending that the state obtained the earlier conviction in violation of **Batson v. Kentucky**,[1] and it therefore could not serve as the basis for sentence enhancement.[2] Aguirre entered a guilty plea under an agreement in which he reserved his right to challenge the enhancement. The guilty plea was accepted and Aguirre was sentenced to prison for 120 months plus a term of supervised release. He timely appealed.

## Analysis

On appeal Aguirre renews his arguments that the district court erred in refusing to quash the enhancement information and, notwithstanding *prima facie* evidence of a **Batson** violation at the 1976 trial, relied on the conviction there obtained in imposing an enchanced sentence.[3] He acknowledges that, due to its nonretroactivity, **Batson** could afford him no relief from his 1985

---

[1]    476 U.S. 79 (1986).

[2]    In connection with this motion, Aguirre produced evidence that the prosecutors used eight of their ten peremptory challenges to dismiss prospective jurors with hispanic surnames.

[3]    Aguirre also claims that the district court improperly refused to conduct an evidentiary hearing on his **Batson** challenge to the prior conviction and asserts the unconstitutionality of 21 U.S.C. § 851(e), insofar as it precludes review of his prior conviction for **Batson** error.

conviction in federal habeas corpus proceedings.[4] Relying on **Burgett v. Texas**,[5] **Baldasar v. Illinois**,[6] and **Bourgeois v. Whitley**[7] for the proposition that unconstitutionally-obtained convictions cannot support sentence enhancements, Aguirre urges, however, that we must deny any prospective effect to his Texas conviction. Although initially facially appealing, we find this argument ultimately unpersuasive.

In **Burgett**, the Supreme Court considered a direct appeal from a murder conviction where, in support of enhanced sentencing, the state had placed before jurors evidence of a prior uncounseled conviction. Noting the fully retroactive effect of **Gideon v. Wainwright**,[8] the Court found Burgett's prior conviction presumptively invalid and held that the state could not use such a conviction either to support guilt or to enhance punishment in a subsequent prosecution.[9] Later cases adhering to **Burgett** prohibit

---

[4] **Allen v. Hardy**, 478 U.S. 255 (1986).

[5] 389 U.S. 109 (1967).

[6] 446 U.S. 222 (1980).

[7] 784 F.2d 718 (5th Cir. 1986).

[8] 372 U.S. 335 (1963).

[9] **Burgett**, 389 U.S. at 114-15.

reliance upon **Gideon**-violating convictions at sentencing,[10] and use of such convictions at trial to impeach the defendant.[11] In **Bourgeois**, we recognized that the **Burgett** principle extends to later use of convictions invalid on different grounds and found invalid a sentencing proceeding in which the trial court considered a conviction by a nonunanimous six-member jury.[12]

Subsequent authority, however, suggests that **Burgett**, its progeny, and **Bourgeois** are not dispositive of the instant case. In **Lewis v. United States**,[13] the Supreme Court found no sixth amendment impediment to a firearms possession conviction under 18 U.S.C. § 1202(a)(1)[14] predicated upon a prior **Gideon**-tainted felony conviction. The Court there noted that it had not endorsed an absolute prohibition on use of uncounseled convictions,[15]

---

[10] **United States v. Tucker**, 404 U.S. 443 (1972).

[11] **Loper v. Beto**, 405 U.S. 473 (1972).

[12] **Bourgeois**, 784 F.2d at 721-22. In **Burch v. Louisiana**, 441 U.S. 130 (1979), the Supreme Court held unconstitutional state criminal convictions for nonpetty offenses by nonunanimous six-member juries. Shortly after the Court handed down **Burch**, the Louisiana Supreme Court, on direct appeal, affirmed the prior conviction at issue in **Bourgeois**.

[13] 445 U.S. 55 (1980).

[14] That statute, now codified as amended at 18 U.S.C. § 922(g)(1), prohibits firearm possession by any person "who has been convicted by a court of the United States or of a State or any political subdivision therof of a felony.

[15] **Lewis**, 445 U.S. at 66-67 (citing **Scott v. Illinois**, 440 U.S. 367 (1979)).

4

distinguishing **Burgett**, **Tucker**, and **Loper**, noting that

> [i]n each of those cases, this Court found that the subsequent conviction or sentence violated the Sixth Amendment because it depended upon the reliability of a past uncounseled conviction.  The federal gun laws, however, focus not on reliability, but on the mere fact of conviction, or even indictment, in order to keep firearms away from potentially dangerous persons.[16]

**Lewis** suggests the close relationship between the right to counsel and the reliability of criminal proceedings as the driving force of the **Burgett** line of cases.[17]  Obviously, convictions obtained through nonunanimous six-member jury verdicts -- at issue in **Bourgeois** -- raise similar concerns.  **Batson** violations, however, do not.  Racially motivated peremptory strikes at best marginally implicate the reliability of fact-finding in criminal trials.[18] **Batson** protects against racially motivated peremptory strikes principally because they "'cast[] doubt on the integrity of the

_____

[16]    **Id.**


[17]    See **Smith v. Collins**, 964 F.2d 483 (5th Cir. 1992) (**Loper** motivated by unreliability of uncounseled convictions).


[18]    E.g., **Powers v. Ohio**, 111 S.Ct. 1364, 1371 (1991) (injury occasioned by racially motivated peremptory strikes does not flow from possible predisposition of dismissed jurors in defendant's favor); **Allen**, 478 U.S. at 259 (rule in **Batson** does not have "such a fundamental impact on the integrity of factfinding as to compel retroactive application"); **Esquivel v. McCotter**, 791 F.2d 350 (5th Cir. 1986) ("The core premises of **Batson** are not involved with enhancing the truth-finding functions of the jury system."). Notably, the Supreme Court has held that, while racially motivated use of peremptory challenges implicates equal protection, it does not violate the criminal defendant's sixth amendment jury trial rights.  **Holland v. Illinois**, 493 U.S. 474 (1990).

judicial process' . . . and place[] the fairness of a criminal proceeding in doubt."[19]

Additionally, *post hoc* identification of **Batson** error presents difficulties we do not find in either the **Burgett** or **Bourgeois** contexts. By contrast to the minimal inquiry required to determine whether a defendant had or waived counsel in prior proceedings, or whether a prior conviction resulted from a unanimous jury verdict,

> the finding of intentional discrimination in use of peremptory challenges is a finding of fact that "largely will turn on evaluation of credibility." Years after trial, the prosecutor cannot adequately reconstruct his reasons for striking a venireman. Nor can the judge recall whether he believed a potential juror's statement that any alleged biases would not prevent him from being a fair and impartial juror.[20]

Thus, the inquiry into possible **Batson** violations tainting a prior conviction -- particularly in a case such as this one, involving 17-year-old peremptory strikes -- offers little potential for a meaningful result.

Racially motivated use of peremptory strikes only marginally implicates the reliability concerns underlying the **Burgett** line of cases. Further, unlike **Burgett**, the instant case does not involve enhancement on the basis of a prior conviction presently subject to

---

[19] **Powers**, 111 S.Ct. at 1371 (internal citation omitted); see also, e.g., **Edmonson v. Leesville Concrete Co.**, 111 S.Ct. 2077 (1991); **Esquivel** (**Batson** primarily concerned with role of discrete minorities in the polity of the United States and with safeguarding accused against arbitrary exercise of power by prosecutor or judge).

[20] **Jones v. Butler**, 864 F.2d 348, 369-70 (1988) (internal citation omitted); see also **Allen**, 478 U.S. at 260 (noting serious proof problems which retroactive application of **Batson** would pose).

6

collateral attack.[21]    Finally, the difficulty inherent in after-the-fact identification of **Batson** violations counsels strongly against requiring inquiry into such error in pre-**Batson** convictions.[22]   We conclude and hold that pre-**Batson** convictions, although potentially tainted by **Batson**-violating use of peremptory strikes, may properly support sentence enhancement in subsequent prosecutions.[23]   In view of this holding, Aguirre's remaining contentions are mooted.

The sentence imposed by the district court is AFFIRMED.

---

[21]    Compare **Kitchens v. Smith**, 401 U.S. 847 (1971) (invalidating uncounseled robbery conviction of indigent defendant which became final before **Gideon** decision) with **Allen** (**Batson** standards inapplicable on habeas corpus review to convictions which had become final at time of that decision).

[22]    Because contemporaneous objection stands as a prerequisite to **Batson** relief, see **Jones**, determination as to the validity of post-**Batson** convictions for enhancement purposes may not present this problem.  Improper use of peremptory strikes, under **Jones**, will admit of relief only where the reviewing court has a record created at trial against which to consider the claim.

[23]    We do not today decide whether post-**Batson** convictions tainted by improperly motivated use of peremptory strikes may support sentence enhancement in a later prosecution.

7