Justice Souter,
dissenting.
Applying the Sixth Amendment to current sentencing law has gotten complicated, and someone coming cold to this case might wonder how we reached this point. A very general overview of the course of decisions over the past eight years may help to put today’s holding in perspective.
Members of a criminal jury are guaranteed to be impartial residents of the State and district of the crime, but the Sixth Amendment right to trial by jury otherwise relies on history for details, and the practical instincts of judges and legisla *385 tors for implementation in the courts. Litigation has, for example, worked through issues of size, see Ballew v. Georgia, 435 U. S. 223 (1978) (prohibiting five-person state juries but allowing juries of six), and unanimity, see Apodaca v. Oregon, 406 U. S. 404 (1972) (allowing nonunanimous juries in state criminal trials); Burch v. Louisiana, 441 U. S. 130 (1979) (prohibiting nonunanimous six-person juries). Such decisions go to what William James would have called the “cash-value” of the Constitution’s guarantee. See W. James, Pragmatism: A New Name for Some Old Ways of Thinking 200 (1907).
One additional issue of both detail and implementation is the line between judge and jury in determining facts, and in particular the legitimate extent of factfinding by a judge when sentencing a defendant after a guilty plea or a jury’s verdict of guilty. Since the very inception of judicial discretion in determining a sentence, judges have acted on what they learn in the course of a trial (and later what they gather from a presentenee report or other evidence at time of sentencing), including details a trial jury may not have found to be true when it returned the guilty verdict or answered a special question. But historically, also, the customary judicial use of these extraverdict facts has been in deciding on a sentence within a range set in advance by the statute defining the crime in question. See Williams v. New York, 337 U. S. 241, 246-247 (1949). Thus, traditionally when a judge imposed a sentence at some point in the range, say, of Q-to-5 years specified by statute for some offense, every fact necessary to go as high as five years had been found by the jury (or admitted), even though the jury had not made particular or implicit findings of the facts the judge might consider in exercising discretion to set the sentence higher or lower within the 5-year range.
It was against this background, in Jones v. United States, 526 U. S. 227 (1999), that we called attention to a serious threat to the practical value of a criminal defendant’s jury *386 right. Jones had been prosecuted under a statute that exemplified a growing practice of providing a definition and penalty for some basic crime subject to the right of jury trial, but then identifying variants carrying higher ranges of penalties depending on facts that arguably might be found by a judge sitting alone. Thus, Jones was convicted solely of carjacking, but if the further fact of causing ‘“serious bodily injury’ ” was shown, the maximum penalty jumped from 15 years to 25. Id., at 230 (quoting 18 U. S. C. §2119 (1988 ed., Supp. V)). The Government’s position was that the extra fact of serious bodily injury raising the penalty range required no jury finding because it was only a condition for imposing an enhanced sentence, up to a judge, not an element of a more serious crime, subject to the right to a jury’s determination. See Jones, 526 U. S., at 233.
It was an unsettling argument, because in prosecutions under these statutory schemes the most serious issue in the case might well be not guilt or innocence of the basic offense, but liability to the substantially enhanced penalty. If, for example, the judge found that Jones had caused not just serious bodily injury, but death, such extraverdict factfinding could have made the difference between 15 years and life imprisonment. Id., at 230 (citing §2119). In a case like that, giving judges the exclusive power to find the facts necessary to sentence in the higher range would make the jury a mere gatekeeper to the more important trial before a judge alone. Id., at 243-244. The Sixth Amendment does not, of course, speak expressly to such a scheme, but that is not a sufficient reason to give it constitutional approval. For if judicial factfinding necessary for an enhanced sentencing range were held to be adequate in the face of a defendant’s objection, a defendant’s right to have a jury standing between himself and the power of the government to curtail his liberty would take on a previously unsuspected modesty.
Jones accordingly treated this practice as suspect enough to call for applying the doctrine of constitutional avoidance *387 when the Court interpreted the statute in question. What the Government called a mere condition for imposing a sentencing enhancement was treated as an element of a more serious offense and made subject to a jury’s factfinding. This interpretation obviated the constitutional decision whether subjecting an unwilling defendant to a more onerous range of sentence on facts found solely by a judge would violate the Sixth Amendment.
The issue did not go away with Jones, and the constitutional challenge was soon presented inescapably, in Apprendi v. New Jersey, 530 U. S. 466 (2000). We held that exposing a defendant to an increased penalty beyond the range for a basic crime, based on facts determined exclusively by a judge, violated the Sixth Amendment, in the absence of a jury waiver; a defendant could not be subjected to a penalty more serious than one authorized by the facts found by the jury or admitted by the defendant. Id., at 490.[1] A judge could constitutionally determine facts for exercising discretion in sentencing up to that point, but a fact that raised the range of possible penalties functioned like an element of a more serious offense, even if a statute ostensibly tied that fact to the sentence alone. Hence, in the absence of waiver, a sentence in that weightier range could be imposed by a judge only if the enhancing fact was found beyond, a reasonable doubt by the trial jury. Ibid. In placing disputed fact-finding off judicial limits when, but only when, its effect would be to raise the range of possible sentences, we made a practical judgment that maintained the historical judicial role in finding facts relevant to sentencing within the range set by a jury’s verdict, but we recognized that the jury right would be trivialized beyond recognition if that traditional practice could be extended to the point that a judge alone *388 (over objection) could find a fact necessary to raise the upper limit of a sentencing range.
From the moment Apprendi drew that line, however, its holding carried apparent implications for the regime of Guidelines sentencing adopted in 1984, see Sentencing Reform Act of 1984,98 Stat. 1987,18 U. S. C. §3551 et seq. (2000 ed. and Supp. IV); 28 U. S. C. § 991 et seq. (2000 ed. and Supp. IV). The general object of Guidelines sentencing was the eminently laudable one of promoting substantial consistency in exercising judicial discretion to sentence within the range set by statute for a given crime. Thus, at the elementary level, the Guidelines law limits the sentence that a judge may impose even within the sentencing range provided by the statute creating a particular offense. In effect, it divides a basic sentencing range into subranges and assigns an offender to a subrange based on the particular facts of the case and the offender’s criminal history. A judge may depart from the assigned subrange only if the case presents a circumstance “not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.” 18 U. S. C. § 3553(b)(1) (2000 ed., Supp. IV). It follows that a judge must find facts beyond those necessary for the jury’s guilty verdict to sentence above (or below, for that matter) the subrange designated for an offender with a comparable criminal history whose cáse presents no relevant facts beyond the formal elements of the crime itself. The result is a hybrid sentencing practice. One could describe it by emphasizing that the judge’s factfinding could never increase the sentence beyond the range set by the law defining the crime, or one could stress that a principal motivation for Guidelines sentencing is eliminating some traditional judicial discretion by forbidding a judge to impose a high sentence except on the basis of some fact beyond those necessary for a guilty verdict (and thus subject to the right to a jury’s determination).
*389 In Blakely v. Washington, 542 U. S. 296 (2004), considering a state sentencing system, similar to the federal scheme, we decided that the latter way of looking at it made more sense, if Apprendi was going to mean something in preserving the historical significance of the jury. See 542 U. S., at 305-306. We held that the additional factfinding necessary for a judge to sentence within a high subrange was comparable to the finding of additional fact required for a judge to impose an enhanced sentence under the law considered in Apprendi. If Blakely had come out the other way, the significance of Apprendi itself would be in jeopardy: a legislature would be free to bypass Apprendi by providing an abnormally spacious sentencing range for any basic crime (theoretically exposing a defendant to the highest sentence just by the jury’s guilty verdict), then leaving it to a judge to make supplementary findings not only appropriate but necessary for a sentence in a subrange at the high end. That would spell the end of Apprendi and diminish the real significance of jury protection that Apprendi had shored up.
In United States v. Booker, 543 U. S. 220 (2005), a majority of the Court applied Blakely’s reasoning and held that the Federal Guidelines, too, subjected defendants to unconstitutional sentences in upper subranges, absent a jury finding or waiver. So far, so good for the Sixth Amendment, but there was the further issue of remedy, and at that step consistency began to falter. If statutory Guidelines were to survive, there were two serious alternatives. One was already in place in courts with the foresight to apply Apprendi to the Guidelines: require any additional facts necessary for a possible high subrange sentence to be charged and submitted to the jury. True, the Government would have to think ahead (and could not charge relevant facts that emerged unexpectedly at trial). But the mandatory character of the Guidelines would be preserved, the goal of consistency would continue to be served, and the practical value of the jury right would not face erosion.
*390 The second remedial alternative was a declaration by the Court that the Guidelines were not mandatory but discretionary, so that finding extraverdict facts was not strictly necessary for sentencing in a high subrange under the Guidelines. On this alternative, a judge who found a subsidiary fact specified as a condition for a high subrange sentence might decide to impose a low sentence (independently of the Guidelines’ own provisions for downward departure), and a judge who found no such fact might sentence within the high subrange for other reasons that seemed sufficient. If the Guidelines were not mandatory, the subsidiary fact merely provided one reasoned basis for a traditional exercise of discretion to sentence at the high end of the sentencing range provided by the statute defining the crime.
But that second alternative could not be so simple: it raised yet further issues, and the reconfigured majority of the Court that in fact adopted it, see 543 U. S., at 244, guaranteed that we would have the case now before us. If district judges treated the now-discretionary Guidelines simply as worthy of consideration but open to rejection in any given case, the Booker remedy would threaten a return to the old sentencing regime and would presumably produce the apparent disuniformity that convinced Congress to adopt Guidelines sentencing in the first place. But if sentencing judges attributed substantial gravitational pull to the now-discretionary Guidelines, if they treated the Guidelines result as persuasive or presumptively appropriate, the Booker remedy would in practical terms preserve the very feature of the Guidelines that threatened to trivialize the jury right. For a presumption of Guidelines reasonableness would tend to produce Guidelines sentences almost as regularly as mandatory Guidelines had done, with judges finding the facts needed for a sentence in an upper subrange. This would open the door to undermining Apprendi itself, and this is what has happened today.
*391 Without a powerful reason to risk reversal on the sentence, a district judge faced with evidence supporting a high subrange Guidelines sentence will do the appropriate fact-finding in disparagement of the jury right and will sentence within the high subrange. This prediction is weakened not a whit by the Court’s description of within-Guidelines reasonableness as an “appellate” presumption, ante, at 351 (emphasis deleted). What works on appeal determines what works at trial, and if the Sentencing Commission’s views are as weighty as the Court says they are, see ante, at 348-351, a trial judge will find it far easier to make the appropriate findings and sentence within the appropriate Guideline, than to go through the unorthodox factfinding necessary to justify a sentence outside the Guidelines range, see 18 U. S. C. § 3553(c)(2) (2000 ed., Supp. IV). The upshot is that today’s decision moves the threat to the practical value of the Sixth Amendment jury right closer to what it was when this Court flagged it in Jones, and it seems fair to ask just what has been accomplished in real terms by all the judicial labor imposed by Apprendi and its associated cases.
Taking the Booker remedy (of discretionary Guidelines) as a given, however, the way to avoid farther risk to Apprendi and the jury right is to hold that a discretionary within-Guidelines sentence carries no presumption of reasonableness. Only if sentencing decisions are reviewed according to the same standard of reasonableness whether or not they fall within the Guidelines range will district courts be assured that the entire sentencing range set by statute is available to them. See Booker, supra, at 263 (calling for a reasonableness standard “across the board”). And only then will they stop replicating the unconstitutional system by imposing appeal-proof sentences within the Guidelines ranges determined by facts found by them alone.
I would therefore reject the presumption of reasonableness adopted in this case, not because it is pernicious in and *392 of itself, but because I do not think we can recognize such a presumption and still retain the full effect of Apprendi in aid of the Sixth Amendment guarantee. But I would not stop at rejecting the presumption. Neither my preferred course nor the choice of today’s majority can avoid being at odds to some degree with the intent of Congress; there is no question that Congress meant to impose mandatory Guidelines as the means of bringing greater uniformity to sentencing. So I point out that the congressional objective can still be attained, but that Booker’s remedial holding means that only Congress can restore the scheme to what it had in mind, and in a way that gives full measure to the right to a jury trial. If Congress has not had a change of heart about the value of a Guidelines system, it can reenact the Guidelines law to give it the same binding force it originally had, but with provision for jury, not judicial, determination of any fact necessary for a sentence within an upper Guidelines subrange. At this point, only Congress can make good on both its enacted policy of mandatory Guidelines sentencing and the guarantee of a robust right of jury trial.
I respectfully dissent.[2]

 We recognized a single exception to this rule, permitting reliance on the fact of a prior conviction without a jury determination that the defendant had previously been convicted. See Apprendi, 530 U. S., at 489-490; see also Almendarez-Torres v. United States, 523 U. S. 224 (1998).

 Because I would ask the Court of Appeals to review the sentence for reasonableness without resort to any presumption, I would not reach the other issues in this case.