STATE OF LOUISIANA      *      NO. 2019-KA-0074

VERSUS      *

     COURT OF APPEAL

AHMAD RAINEY      *

     FOURTH CIRCUIT

     *

     STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 528-085, SECTION "O"
Honorable Dennis J. Waldron, Judge
* * * * * *
**Judge Paula A. Brown**
* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Paula A. Brown, Judge
Tiffany G. Chase)

**BELSOME, J., CONCURS IN THE RESULT.**

Leon Cannizzaro
DISTRICT ATTORNEY ORLEANS PARISH
Donna Andrieu
Kyle Daly
DISTRICT ATTORNEY'S OFFICE
ORLEANS PARISH
619 S. White Street
New Orleans, LA 70119

            COUNSEL FOR STATE

Mary Constance Hanes
LOUISIANA APPELLATE PROJECT
P. O. Box 4015
New Orleans, LA 70178-4015

            COUNSEL FOR DEFENDANT

Ahmad R. Rainey #734329
C.P.D.C.
1415 Hwy. 520
Homer, LA 71040

    PRO SE

**AFFIRMED IN PART;
VACATED IN PART,
AND REMANDED.
October 9, 2019**

This is a criminal appeal. On February 4, 2016, co-defendants, Ahmad Rainey (Defendant) and Gilda Woodridge (Ms. Woodridge) were indicted by a grand jury in a single bill. Defendant was charged, in counts one and two, with second-degree murder of Vernon Lewis and Daniel Millon (La. R.S. 14:30.1) and, in count five, with obstruction of justice by tampering with evidence (La. R.S. 14:130.1). Ms. Woodridge was charged, in counts three and four, with manslaughter of Mr. Lewis and Mr. Millon (La. R.S. 14:30.1), and, in count five, with obstruction of justice by tampering with evidence (La. R.S. 14:130.1). On April 9, 2018, the day before jury selection began, the State filed a motion to invoke firearm sentencing provision ("motion to invoke"), pursuant to La. C.Cr.P. arts. 893.1-893.3, as to Defendant's sentences to be imposed on the charges of second degree murder based on Defendant's use of a firearm. On April 10, 2018, a jury trial commenced, and that morning, the State severed Ms. Woodridge's trial.[1] After a two-day jury trial, Defendant was found, on count one, guilty to the responsive verdict of manslaughter of Mr. Lewis; on count two, not guilty of second-degree murder of Mr. Millon; and on count five, guilty of obstruction of justice by a ten to two verdict. Following denial of Defendant's motion for new trial, a sentencing hearing was held, and Defendant was sentenced to twenty-eight (28) years imprisonment, at hard labor, for manslaughter and twenty (20) years imprisonment, at hard labor, for obstruction of justice, with the sentences to run concurrently.

_____
[1] On April 17, 2018, the charges against Ms. Woodridge were *nolle prosequi* by the State.

1

Defendant filed a notice of appeal in the district court which was granted. This appeal follows wherein Defendant seeks review of his convictions and sentences and assigns three errors:[2]

1. The State committed prosecutorial misconduct by severing co-defendant on the morning of trial, depriving Defendant of due process and a fair trial;

2. The district court erred in sentencing Defendant for manslaughter under the firearm sentencing enhancement provisions of La. C.Cr.P. art. 893.3 because the State "filed the required notice too late"; and

3. Defendant's Sixth and Fourteenth Amendment rights were violated by the lack of a unanimous jury verdict on the conviction of obstruction of justice.

For the reasons set forth below, we affirm Defendant's convictions and vacate his sentences and remand to the district court for resentencing consistent with this opinion.

## ERRORS PATENT

Pursuant to La. C.Cr.P. art. 920, we have reviewed the record for errors patent and find an error patent, which will be discussed *infra*, in connection with assignment of error number two.[3]

## STATEMENT OF FACTS

At trial, Defendant admitted that he shot and killed the victims, Vernon Lewis and Daniel Millon, at Hidden Lake Apartment Complex in New Orleans

---

[2] Defendant requested time to file a supplemental *pro se* brief. This Court granted Defendant's request to file the brief by September 23, 2019, but no supplemental *pro se* brief was received.

[3] La. C.Cr.P. art. 920(2) provides that on appeal "[a]n error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence" will be considered. In *State v. Kelly*, 15-0484, p. 11 (La. 6/29/16), 195 So.3d 449, 456 (quoting *State v. Wrestle, Inc.,* 360 So.2d 831, 837 (La.1978), *rev'd in part on other grounds, Burch v. State of Louisiana*, 441 U.S. 130, 99 S.Ct. 1623 (1979)), the Supreme Court set forth what can be reviewed on error patent review explaining that "only . . . the pleadings and proceedings alone considered part of the record for purposes of patent-error appellate review in general, the indictment or information, the minutes, and the verdict and sentence."

2

East, and after he left the scene, he disposed of the firearm that he used. Defendant urged he was acting in self-defense.

Relevant testimony at trial, which included Defendant, Darneka Williams, a forensic pathologist from the Orleans Parish Coroner's Office, former New Orleans Police Department (NOPD) homicide detective Jana Thompson, and stipulations by the defense, forms the basis of the statement of facts.

*Manslaughter*

Defendant and Ms. Woodridge were in a romantic relationship for ten years and had four children together; the couple were engaged to be married. Defendant and Ms. Woodridge lived in a downstairs apartment at the Hidden Lake Apartment Complex in New Orleans East. Ms. Williams, along with her mom, sister, and her children, resided in the apartment above Defendant and Ms. Woodridge. At trial, Defendant described the apartment complex as "very dangerous."

On the afternoon of December 28, 2017, Defendant and Ms. Woodridge, as well as their children, went to the closing for the purchase of their new home and then, went to celebrate the occasion. After returning to the apartment complex that evening, they discovered two motorcycles parked in front of their apartment door; one of the motorcycles was blocking entry into the apartment and the other was near the stairway that led to the second floor of the apartment complex.[4] Defendant and Ms. Woodridge knew the motorcycles belonged to guests of their upstairs neighbor, Ms. Williams, because this had occurred on a previous occasion. Mr. Lewis, Ms. Williams' boyfriend, and two of their friends, Mr. Millon and

---

[4] Testimony at trial indicated the motorcycles were stolen.

Tynicka Jones[5] along with Ms. Jones' child, were visiting Ms. Williams that night. Ms. Woodridge ascended upstairs, and knocked on Ms. Williams' door to ask that her guests relocate their motorcycles. Ms. Williams agreed, and Mr. Lewis, Mr. Millon, along with Ms. Williams, Ms. Jones, and two children, proceeded downstairs.

Ms. Williams testified that when she arrived downstairs, she observed Ms. Woodridge go into her apartment, and Defendant standing in the doorway. Mr. Lewis, Mr. Millon, and Defendant talked for a moment. Ms. Williams stated that Defendant told Mr. Lewis he did not have to move his motorcycle which was parked underneath the stairway. In addition, Ms. Williams recalled that Mr. Millon began the process of moving his motorcycle. She stated she observed Mr. Millon walk towards the parking lot and use his cell phone. Ms. Williams stated that "[a]fter that, [Defendant] asked him [Mr. Millon] if he was calling somebody, and that was the end of it . . . . he went in the doorway and grabbed something and came back out." She explained that Defendant grabbed his gun. Ms. Williams recalled that when she saw an expression on Defendant's face, she thought something may happen so she grasped her child and started upstairs. Ms. Jones and her child followed soon after. While running up the stairs, Ms. Williams heard gunshots, and when she returned to her apartment, she called 911. Ms. Williams testified Mr. Lewis and Mr. Millon were not armed.

The defense stipulated that Ms. Williams identified Defendant as the person in the doorway of the apartment that picked up a "big gun."

_____

[5] Ms. Jones did not testify at trial. Detective Thompson testified that Ms. Jones, in her statement, indicated the men were arguing back and forth.

Defendant testified that when Mr. Lewis and Mr. Millon came downstairs, he was standing in the doorway of his apartment. As Ms. Woodridge walked toward their apartment, he thought Mr. Millon was going to attack Ms. Woodridge from behind which prompted him to locate his firearm, an AR15, inside near his apartment door in preparation for a potential confrontation. According to Defendant, after exchanging words and realizing that Mr. Lewis and Mr. Millon were not going to move their motorcycles, he requested that Mr. Lewis and Mr. Millon leave several times; they refused.

Defendant testified that during his interaction with Mr. Lewis and Mr. Millon, Mr. Millon called someone. Defendant believed that Mr. Millon was summoning others to get their guns and come to the apartment complex.

Defendant stated that he observed Mr. Millon "clutching" his weapon on his waist and "circling around," and Mr. Lewis reached under his sweatshirt. Defendant testified Mr. Lewis usually carried a gun. Defendant noticed Ms. Williams and Ms. Jones "creeping" up the stairway. Defendant interpreted these actions as possible threats. Defendant testified when Mr. Millon stepped toward him, he shot Mr. Millon. In addition, Defendant testified that initially Mr. Lewis attempted to grab Defendant's gun. Being unsuccessful, Mr. Lewis tried to "break away" from Defendant, and Defendant shot Mr. Lewis because he thought Mr. Lewis was going for a gun underneath his sweatshirt. Defendant testified he did not want to kill the men, and he did not know why they wanted to kill him.

At trial, the forensic pathologist employed by the Orleans Parish Coroner's Office, who performed the autopsies of the two victims, testified Mr. Millon suffered four gunshot wounds, and Mr. Lewis suffered five gunshot wounds. The

pathologist concluded the gunshot wounds suffered by Mr. Millon and Mr. Lewis resulted in their death.

Detective Thompson[6] testified that she was assigned to investigate the double homicide. During the course of her investigation, she learned that all of the bullet casings collected from the scene were of the same caliber—5.56—generally used in AR15s and the bullet casings had all been fired from the same firearm. Detective Thompson did not locate the weapon. In addition, Detective Thompson testified that "there was no evidence that suggested other guns were involved."

Detective Thompson executed a search warrant of Defendant's apartment. During the search, two boxes of the same type of ammunition that had been fired at the scene were discovered.

The defense stipulated that the casings found at the scene came from the same type of bullets from the two boxes of ammunition seized by police at Defendant's apartment.

*Obstruction of Justice*

Defendant testified because he believed there was a possibility that Mr. Millon, via phone, had summoned others to get their guns and come to the apartment complex, he entered his vehicle and fled the scene with his family. During his flight, Defendant threw the firearm out of the vehicle's window. Defendant testified he discarded the weapon because he did not want to further frighten Ms. Woodridge and his children. Subsequently, Defendant and Ms. Woodridge made plans for the care of their children, hired attorneys, and turned themselves into law enforcement.

---

[6] At the time of trial, Detective Thompson, was employed with the St. John Sheriff's Office.

**DISCUSSION**

*Assignment of Error No. 1: Prosecutorial misconduct*

Defendant asserts the State committed prosecutorial misconduct by severing Ms. Woodridge's trial the morning of trial, depriving Defendant of due process and a fair trial.

Defendant and Ms. Woodridge were set to be tried jointly. The day before trial began, April 9, 2019, Defendant filed a *motion in limine,* pursuant to *U.S. v. Bruton,* 391 U.S. 123, 88 S.Ct. 1620 (1968). In *Bruton,* the defendant was implicated in a robbery by the confession of his codefendant which was introduced into evidence. The codefendant did not testify at the joint trial. The United States Supreme Court held that the admission of the codefendant's statement had deprived the defendant of his rights under the confrontation clause of the Sixth Amendment. Based on *Bruton*, Defendant moved that the State be barred from introducing the statement of Ms. Woodridge that allegedly incriminated Defendant.[7] The district court denied Defendant's motion.

In turn, on that same day, the State severed Ms. Woodridge from the trial. The defense objected on the grounds severance of Ms. Woodridge would

---

[7] The motion in limine provided:

> The defendant, Ahmad Rainey, moves this court, in Limine, to order the District Attorney for the Parish of Orleans to not introduce a statement allegedly made by his co-defendant that incriminates him.

> The United States Supreme Court in *U.S. v. Bruton*, 391 U.S. 123 (1968) ruled that the admission of such a statement

>> "Violated petitioner's right to cross examination secured by the confrontation clause of the SIXTH AMENDMENT."

> WHEREFORE, the defendant prays that the District Attorney for the Parish of Orleans be order to not introduce the alleged incriminating statement of Mr. Rainey's co-defendant.

7

"eliminate" the only defense witness they had and preparations for Defendant's trial were based on a joint trial. The district court overruled the objection. In addition, Defendant requested a continuance of the trial which the district court denied.

At trial when Ms. Woodridge was called as a witness for the defense, she refused to testify by invoking her Fifth Amendment right against self-incrimination.

Post-conviction, Defendant asserted the State's severance of Ms. Woodridge as a ground for a new trial, and a hearing was held. In denying this claim, the district court concluded that Ms. Woodridge's decision not to testify at Defendant's trial or at her separate trial because of her pending charges did not prejudice Defendant. The district court opined that "this case lacks a supposition of injustice born by the defendant . . . when the trial was severed." We agree.

The district attorney controls the administration of criminal prosecutions. La. Const. art. 5, § 26(B). In addition, La. C.Cr.P. art. 61 states that "[s]ubject to the supervision of the attorney general, as provided in Article 62, the district attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute." Louisiana Code Criminal Procedure Article 704 pertinently provides that "[j]ointly indicted defendants shall be tried jointly unless. . . .the State elects to try them separately. . . ." There is no qualification or condition upon which the State must base its decision to sever jointly indicted defendants. Thus, the election to sever Ms. Woodridge was within the discretion of the State.

In *State v. Walland*, 555 So.2d 478, 480 (La. App. 4th Cir. 1989)(citations omitted), this Court recognized that "[w]hen the District Attorney's authority under La.C.Cr.P. art. 61 does not interfere with a defendant's constitutional guarantees, his actions will not be disturbed by the judicial branch," but cautioned that "[t]he District Attorney's statutory authority to control the prosecution cannot supersede the defendant's constitutional right to a fair trial, to present a defense, and to call his witness." *Id.*, 555 So.2d at 482.

Defendant asserts the State knew it could not prove the charges against Ms. Woodridge and severed the trials knowing Ms. Woodridge would not risk testifying while her charges were pending. Defendant urges the State committed prosecutorial misconduct by purposely "depriv[ing] [defendant] of testimony from [Ms. Woodridge] which would have corroborated his claim that he acted in self-defense" resulting in a denial of Defendant's right to due process and a fair trial.

The State counters Ms. Woodridge made a statement incriminating Defendant and had that statement been entered at a joint trial, Defendant's Sixth Amendment confrontation rights would have been violated if Ms. Woodridge did not take the stand. In addition, the State asserts that Defendant failed to establish that Ms. Woodridge's testimony would have exonerated him. The State points out that Defendant did not submit or proffer an affidavit from Ms. Woodridge of her proposed testimony, and he did not call Ms. Woodridge as a witness at the hearing on the motion for new trial.

In *State v. Duhon*, 18-0593 (La. App. 1 Cir. 12/28/18), 270 So.3d 597, *writ denied*, 19-0124 (La. 5/28/19), 273 So.3d 315, co-defendants, husband and wife,

9

were charged with multiple crimes in connection with the wife's employer, a real estate investment and holding company. The state severed the wife from trial on the day trial was to begin. On appeal, the defendant argued that he was denied the opportunity to prepare an alternate defense when the trial court allowed the state to sever his wife and denied his motion to continue. The defendant claimed that in a joint trial, his wife would have testified and exonerated him. The First Circuit held the record did not show that the State engaged in misconduct by electing to sever the cases and try the defendant first. *Id.*, 18-0593, p. 46, 270 So.3d at 629. In addition, it opined that that the defendant did not prove, as a result of the severance, what prejudice he suffered. The First Circuit explained that the defendant failed to show: (1) the co-defendant would have testified on the defendant's behalf; (2) the substance of the co-defendant's testimony; and (3) the testimony would have been exculpatory. *Id.; See also, State v. Lawrence*, 40,278, p. 14 (La. App. 2 Cir. 3/15/06), 925 So.2d 727, 741 (wherein the defendant contended that the state's choice to sever the co-defendant on the day of trial denied the defendant the right to a fair trial and due process, but the Second Circuit found the defendant failed to set forth how his rights were violated or how he was prejudiced).

In the case *sub judice,* as in *Duhon,* the record fails to support Defendant's claim of prosecutorial misconduct due to the State's decision to sever Ms. Woodridge from the trial. Defendant failed to show that Ms. Woodridge would have actually testified at a joint trial or that her testimony would have been either

10

exculpatory or corroborative. In fact, Defendant's motion in limine sought to exclude any testimony by Ms. Woodridge that incriminated him. Further, Defendant did not call Ms. Woodridge as a witness at the hearing on his motion for a new trial which occurred after the charges against Ms. Woodridge had been dismissed. Thus, we conclude that Defendant fails to prove he sustained prejudice—deprived of due process and a fair trial—as a result of the State's severing Ms. Woodridge from trial.

This assignment of error lacks merit.

### Assignment of error no. 2 and error patent: Firearm sentencing enhancement

Defendant asserts that the district court erred in sentencing him under the firearm sentencing provisions of La. C.Cr.P. art. 893.3.

*Applicable law*

The sentencing court is given wide discretion in imposing a sentence within the statutory limits. A legal sentence is one authorized or directed by law. *See State v. Moore,* 640 So.2d 561, 563 (La. App. 3rd Cir. 1994)*(quoting State v. Johnson,* 220 La. 64, 55 So.2d 782 (1951))*; see also*, *State v. Mead*, 14-1051 (La. App. 4 Cir. 4/22/15), 165 So.3d 1044, 1047 ("A claim that a sentence is illegal is primarily restricted to those instances in which the term of the prisoner's sentence is not authorized by the statute or statutes which govern the penalty authorized for the crime for which the prisoner has been convicted.").

Louisiana Code of Criminal Procedure Article 893.3 specifies the mandatory minimum terms within the sentencing range provided by the legislature for the underlying offense when the offender possesses, uses, or discharges a firearm during commission of an offense. *State v. Aaron*, 11-0307, pp. 1-2 (La. 6/24/11),

11

66 So.3d 18, 19. To trigger the mandatory minimum terms under Article 893.3, the State must comply with La. C.Cr.P. art. 893.1, entitled "Motion to invoke firearm sentencing provision":

> A. If the district attorney intends to move for imposition of sentence under the provisions of Article 893.3, he shall file a motion **within a reasonable period of time prior to commencement of trial** of the felony or specifically enumerated misdemeanor in which the firearm was used.

> B. The motion shall contain a plain, concise, and definite written statement of the essential facts constituting the basis for the motion and shall specify the provisions of this Chapter under which the district attorney intends to proceed. (emphasis added).

If the state complies with Article 893.1, La. C.Cr.P. art. 893.2 (effective August 15, 2006 to June 10, 2019) provides that the motion shall be heard and disposed of prior to the imposition of sentence.[8] After compliance with Articles 893.1 and 893.2, the trial court must impose the mandatory sentence as set forth in La.

---

[8] La. C.Cr.P. art. 893.2 provides:

> A. If a motion was filed by the state in compliance with Article 893.1, the court may conduct a contradictory hearing following conviction to determine whether a firearm was discharged, or used during the commission of the felony. . . .

> B. The court may consider any evidence introduced at the trial on the merits . . . or at the hearing of any motion filed in the case. The court may also consider any other relevant evidence presented by either party at the contradictory hearing. The hearsay rule shall not be applicable at such contradictory hearings.

> C. The burden shall be upon the state to establish by clear and convincing evidence that the defendant actually discharged, used, or actually possessed a firearm during the commission of the felony or specifically enumerated misdemeanor for which the defendant was convicted and that any conditions otherwise required by the mandatory minimum sentencing provisions of Article 893.3 are shown to be applicable.

> D. If at any time during or at the completion of the trial, the court finds by clear and convincing evidence that the state has established that a firearm was discharged or used during the commission of the felony or specifically enumerated misdemeanor or actually possessed during the commission of a felony which is a crime of violence as defined by R.S. 14:2(B) . . the court may dispense with the hearing provided for in Paragraph A of this Article.

> E. The motion shall be heard and disposed of prior to the imposition of sentence.

C.Cr.P. art. 893.3 in conjunction with the underlying statute for the offense which the defendant was convicted. Louisiana Code of Criminal Procedure Article 893.3 (effective August 1, 2015 to June 10, 2019) pertinently provides:

> E. (1)(a)Notwithstanding any other provision of law to the contrary, if the finder of fact has determined that the defendant committed a felony with a firearm as provided for in this Article, and the crime is considered a violent felony as defined in this Paragraph, . . . . [I]f the firearm is discharged during the commission of such a violent felony, the court shall impose a minimum term of imprisonment of not less than twenty years nor more than the maximum term of imprisonment provided for the underlying offense.
>
> (b) A "violent felony" for the purposes of this Paragraph is: second degree sexual battery, aggravated burglary, carjacking, armed robbery, second degree kidnapping, manslaughter, or forcible or second degree rape.
>
> (2) A sentence imposed under this Paragraph shall be without benefit of parole, probation or suspension of sentence.

With these principles in mind, we turn to the assigned error and error patent.

*Manslaughter*

Defendant asserts that the district court erred in applying La. C.Cr.P. art. 893.3(E) when imposing his sentencing for manslaughter because the State's filing of the motion to invoke the day before trial commenced "does not constitute a reasonable period of time in which to provide notice to the defense."[9]

The State, on April 9, 2018, in open court, filed a written motion to invoke that pertinently provided:

---

[9] The State contends this assigned error was waived because Defendant failed to object, citing La. C.Cr.P. art. 841, to the untimeliness of the motion during the trial or sentencing proceedings. However, La. C.Cr.P. art. 841(B) provides: "The requirement of an objection shall not apply to the court's ruling on any written motion." Louisiana Code of Criminal Procedure Article 893.1 requires the State to file a written motion, and La. C.Cr.P. art. 893.2 requires that the motion be heard and disposed of prior to imposition of sentence. As a result, this assigned error is properly before this Court for review.

> NOW INTO COURT . . . comes the State of Louisiana, who respectfully moves this Court to invoke the firearm sentencing provisions contained in La. C.Cr.P. art. 893.3.
>
> The defendant . . . committed **second-degree murder** of the victims Daniel Mill[on] and Vernon Lewis. During the commission of that crime, the defendant . . . discharged a firearm, causing bodily injury to the victims. (emphasis added).

Trial commenced on April 10, 2019. Due to the State's motion to invoke, the district court, when imposing Defendant's manslaughter sentence, which under La. R.S. 14:30.1 required a term of imprisonment from zero to forty years (0 to 40), considered that the minimum sentence it could impose was twenty (20) years pursuant to La. C.Cr.P. art. 893.3(E).

The notice requirement under Article 893.1 was ruminated in depth by this Court in *State v. Sneed*, 12-0809 (La. App. 4 Cir. 6/12/13), 119 So.3d 850. In *Sneed*, on appeal, the defendant, convicted of attempted manslaughter, complained that the trial court erred in sentencing him under Article 893.3 because the state filed the notice required under La.C.Cr.P. art. 893.1 too late; the state filed the Article 893.1 motion immediately before jury *voir dire* commenced. This Court agreed that the state's notice to the defendant under Article 893.1 was too late, resulting in the trial judge lacking authority to invoke the firearm sentencing provision of Article 893.3. *Id.*, 12-0809, p. 1, 119 So.3d at 851. As a result, the *Sneed* court vacated the defendant's sentence and remanded the matter for resentencing. This Court opined:

> We have already held that a notice to invoke the firearm sentencing enhancement was untimely when filed "immediately prior to jury selection" as that was not "a reasonable period of time prior to commencement of trial." *State v. Heck*, 560 So.2d 611, 618 (La. App. 4th Cir.1990).

14

In *Heck,* the defendant's offense occurred prior to the 1988 amendment that rewrote Article 893.1 to include the notice provision and the requirement that notice be given within a reasonable period of time prior to the commencement of trial. The court determined that the amendment to La. C.Cr.P. art. 893.1 was procedural in nature, and thus applied to the defendant's trial which occurred three weeks after the amendment took effect.

The prosecution urges us not to follow our own more recent and controlling precedent in this matter. It points us to our decision in *State v. McKnight*, 518 So.2d 6 (La. App. 4th Cir. 1987). There, a written notice was also filed just prior to the commencement of trial and we held it to be sufficient. Notably, however, at the time of the trial in *McKnight*, the firearm sentencing enhancement provision was contained only in La. C.Cr.P. art. 893.1, and it did not include any provision that the State must give notice of its intent to invoke the enhanced sentencing provision prior to the commencement of trial.

*Id.*, 12-0809, pp. 2-3, 119 So.3d at 851 (footnote omitted).  This Court continued

and addressed the impact of the 1988 amendment to Article 893.1:

The prosecution also urges us to adopt the holding in *State v. King*, 563 So.2d 449, 458 (La. App. 1st Cir.1990). There, the First Circuit reached a different conclusion than we did in *Heck*, holding that notice filed the day before jury selection began was timely. The court there noted that there had never been any doubt that a gun was used in the commission of the offense. Because the only issue was whether or not the shooting was a murder, manslaughter, or committed in self-defense, the court concluded that there was no need for "a more advanced notice of the State's intention to seek enhancement under former Article 893.1." *King*, 563 So.2d at 458. *King* relied on *State v. Allen*, 496 So.2d 301 (La. 1986), in which the court held that its prior decision in *State v. Jackson*, 480 So.2d 263 (La.1985), was only entitled to limited retroactivity because the need for notice was based on due process. In *Jackson*, the Supreme Court held only that the State must provide a defendant with written notice prior to trial of its intent to seek an enhanced penalty under Article 893.1. *But, as we noted, before the 1988 amendment, no notice requirement was included in La.C.Cr.P. art. 893.1.* In neither *Jackson* nor *Allen* did the Supreme Court set out any particular time period in advance of trial that notice must be given, stating only that the notice must be in "advance of trial" and "pre-trial." *Jackson*, 480 So.2d at 271.

The legislature in its amendment to Article 893.1, however, did not adopt the *Jackson* language. The legislature chose to use the language "within a reasonable period of time prior to commencement of trial" rather than simply state that written notice must be filed

before trial. It appears that the legislature was concerned that it satisfy any Due Process considerations by inserting the phrase "reasonable period of time prior to commencement" of the trial, rather than the less precise "pre-trial" language.

Thus, *we conclude that the 1988 amendment rejected the notion that so long as the notice is given pre-trial it would be sufficient in all cases to trigger the enhancing penalties*. While what constitutes a reasonable period of time prior to trial may well vary given the circumstances of any specific case, we are satisfied with the bright line rule of *Heck* that notice filed just prior to jury selection was not filed within "a reasonable period of time" prior to the trial starting.

*Id*., 12-0809, pp. 3-4, 119 So.3d at 852.

The State contends *Sneed* is distinguishable. The State points out the motion to invoke was filed the day before commencement of trial which is reasonable instead of before the selection of the jury began as in *Sneed*. In support, the State cites *State v. Curtis*, 04-111 (La. App. 3 Cir. 8/4/04), 880 So.2d 112, wherein the defendant complained the State failed to comply with Article 893.1 when the state filed the motion the day the defendant, originally charged with second degree murder, entered a guilty plea to manslaughter. The Third Circuit concluded the record provided "proof that the purposes of Article 893.1's written notice requirement were met through actual notice to the Defendant at the earliest opportunity." *Id*., p. 8, 04-111, p. 9, 880 So.2d at 118. However, in *Sneed*, as discussed *supra*, this Court held "what constitutes a reasonable period of time prior to trial may well vary given the circumstances of any specific case . . . ." *Sneed*, 12-0809, p. 4, 119 So.3d at 852. As a result, we examined the circumstances in this case to determine if the notice by the State was reasonable as contemplated by Article 893.1 and concluded it was not.

The appellate record indicates that Defendant was indicted by the grand jury on February 4, 2016. There is no question at the time of the indictment that a

16

firearm was used during the commission of the alleged second degree murders in which the penalty was a mandatory sentence of life imprisonment if Defendant was convicted as charged.[10] On April 9, 2017, Defendant appeared in court with his counsel for trial at which time the trial was continued until the next day, and the State filed the motion to invoke.[11] On April 10, 2017, trial commenced. Under the circumstances of this case, we find the State's filing of the motion to invoke was not within a reasonable period of time before trial as contemplated by La. C.Cr.P. art. 893.1. For this reason, the district judge lacked authority to apply the sentencing enhancement provisions of Article 893.3 to Defendant's manslaughter sentence.

*Obstruction of Justice*

A review of the record for errors patent indicates that the district court committed an error patent when it applied Article 893.3 when imposing Defendant's sentence for obstruction of justice. The State's motion to invoke specifically related to Defendant's charges for second degree murder, and the State did not file a motion to invoke as to the obstruction of justice conviction. *See* La.

---

[10] Similarly, in both *Heck,* 560 So.2d 611 and *Sneed*, 119 So.3d 850, there was no issue that a firearm was used, and the defendants were charged with second degree murder. The *Sneed* Court noted that because the defendant in *Heck* was charged with second degree murder, if the jury verdict had not been disturbed, the defendant would have faced a mandatory sentence of life imprisonment at hard labor without the benefit of parole. This Court continued opining that as result, the firearm enhancement provisions would have been "superfluous," and was only because the conviction was reduced to manslaughter that the provisions of La. C.Cr.P. art. 893.1 were imposed. *Id.*, 12-0809, p. 5, 119 So.3d at 852.

[11] The docket master dated April 9, 2019, pertinently provides:

> THE DEFENDANT AHMAD R. RAINEY APPEARED FOR TRIAL WITH COUNSEL . . . TRIAL CONTINUED TO 04/10/18 . . . IN OPEN COURT STATE FILE: - STATE'S MOTION TO INVOKE FIREARM SENTENCING PROVISIONS.

The appellate record neither contains a minute entry nor a transcript of the April 9, 2019 proceedings.

C.Cr.P. art. 893.1(B)("The motion shall contain a plain, concise, and definite written statement of the essential facts constituting the basis for the motion. . . .").[12]

Notwithstanding, at sentencing, the State commented:

> [P]rior to commencement of the trial the State did file a motion for the defendant to be sentenced pursuant to the firearm sentencing provisions of 893.3. So if the Court found that clear and convincing evidence that the defendant did in fact discharge a firearm in the commission of either of these crimes, the minimum penalty would be 20 years imprisonment.

Although the applicable penalty for obstruction of justice in this case included imprisonment for not more than twenty (0 to 20) years at hard labor,[13] the district court mistakenly believed that it was required to impose a minimum twenty-year sentence on the conviction for obstruction of justice due to the State's misrepresentation that the motion to invoke applied to both crimes. The sentencing transcript reflects that the district court stated "as it relates to the obstruction of justice . . . I sentence you to the minimum of twenty-years imprisonment . . . ." Based on the foregoing, we conclude that the district court committed an error

---

[12] Similarly, in *State v. Bourg*, 18-435 (La. App. 3 Cir. 12/6/18), 260 So.3d 679, 683-84, *writ granted*, (the defendant is seeking *writ of certiorari*) 19-0038 (La. 6/26/19), 275 So.3d 876, on appeal, the defendant alleged that the trial court erroneously applied the firearm sentencing provision of La. C.Cr.P. art. 893.3 to his sentence because the State did not give notice of its intent to invoke such enhancement. The Third Circuit agreed and held that as a result of the state's failure to file a motion as mandated by Article 893.1, the trial court lacked authority to apply the firearm sentencing enhancement to the defendant's sentence. The Third Circuit found that although the term of imprisonment imposed by the trial court was within the legal range for manslaughter, zero to forty years (0 to 40), the trial court erroneously believed that a minimum sentence of twenty (20) years was required. The Third Circuit concluded that the trial court committed an error patent by applying the firearm sentencing enhancement of La. C. Cr.P. art. 893.3 without any notification by the State. *See also*, *State v. Scott*, 50,080 (La. App. 2 Cir. 8/12/15), 174 So.3d 728, (wherein the Second Circuit recognized as an error patent the trial court's erroneous enhancement of the defendants' sentences for manslaughter when the State did not file the motion to enhance the sentences pursuant to La. C.Cr.P. art. 893.1 until the morning of the sentencing hearing.)

[13] When the obstruction of justice "involves a criminal proceeding in which a sentence of imprisonment necessarily at hard labor for any period less than a life sentence may be imposed," the penalty is a fine not more than fifty thousand dollars, or imprisonment for not more than twenty (0 to 20) years at hard labor, or both. La. R.S. 14:130.1(B)(2).

18

patent by applying, to the sentence imposed on the obstruction of justice conviction, the firearm sentencing provisions of La. C.Cr.P. art. 893.3, without any notification by the State as required by La. C.Cr.P. art. 893.1.

Accordingly, the sentences imposed for manslaughter and obstruction of justice are vacated and the matter is remanded to the district court for resentencing consistent with this opinion.

### Assignment of error no. 3: non-unanimous verdict

Defendant contends that his constitutional rights under the Sixth and Fourteenth Amendments of the United States Constitution were violated by the lack of a unanimous jury verdict on his obstruction of justice charge.[14] Defendant points out that *Ramos v. Louisiana*, No. 18-5924, __ U.S. __, 139 S.Ct. 1318 (2019),[15] is currently pending before the United States Supreme Court and suggests the Court will determine if unanimous jury verdicts are constitutionally required for defendants in state criminal courts, and he seeks to preserve this claim.[16] Defendant requests that in the interim, this Court revisit this Sixth Amendment issue and hold that the lack of a unanimous jury verdict on the conviction of obstruction of justice violated his constitutional rights.

---

[14] The appellate record reflects that when the district court was instructing the jury, defense counsel objected stating "I want object to the less than unanimous verdict that's in Louisiana law. . . ."

[15] 2019 WL 1231752.

[16] In *State v. Ramos*, 16-1199 (La. App. 4 Cir. 11/2/17), 231 So.3d 44, *writ denied*, 17-2133 (La. 6/15/18), 257 So.3d 679, and *writ denied sub nom*, *State ex rel. Evangelisto Ramos v. State*, 17-1177 (La. 10/15/18), 253 So.3d 1300, the defendant argued that the trial court erred in denying his motion to require a unanimous jury verdict for felonies in which imprisonment is necessarily at hard labor,. This Court held that under current jurisprudence from the United States Supreme Court, such non-unanimous jury verdicts are constitutional.

The severity of the punishment for a crime provides the basis for determining the number of jurors which must comprise the jury and the number of jurors which must concur to render a verdict. *State v. Goodley*, 398 So.2d 1068, 1070 (La. 1981). In the case *sub judice*, Defendant committed the offense of obstruction of justice in 2015, and the criminal proceeding in which the obstruction of justice was involved was second degree murder; thus, Defendant was subject to a sentence necessarily at hard labor. La. R.S. 14:130.1.[17] The applicable constitutional article, La. Const. art. 1, § 17, in effect at the time of the commission

---

[17] La. R.S. 14:130.1, at the time of the commission of the offense, provided in part:

A. The crime of obstruction of justice is any of the following when committed with the knowledge that such act has, reasonably may, or will affect an actual or potential present, past, or future criminal proceeding as hereinafter described:

(1) Tampering with evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding. Tampering with evidence shall include the intentional alteration, movement, removal, or addition of any object or substance either:

(a) At the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any investigation by state, local, or United States law enforcement officers; or

(b) At the location of storage, transfer, or place of review of any such evidence.
* * *

B. Whoever commits the crime of obstruction of justice shall be subject to the following penalties:

(1) When the obstruction of justice involves a criminal proceeding in which a sentence of death or life imprisonment may be imposed, the offender shall be fined not more than one hundred thousand dollars, imprisoned for not more than forty years at hard labor, or both.

of the offense, provided that Defendant be tried by a jury trial of twelve, "ten of whom must concur to render a verdict." La. Const. art. 1, § 17.[18]

Recently, La. Const. art. 1, § 17, was amended, effective December 12, 2018:

> A criminal case in which the punishment may be capital shall be tried before a jury of twelve persons, all of whom must concur to render a verdict. **A case for an offense committed prior to January 1, 2019, in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict.** A case for an offense committed on or after January 1, 2019, in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, all of whom must concur to render a verdict.

Also, La. C.Cr.P. art. 782, was amended and enacted effective January 2019, and pertinently provides:

> A case in which punishment may be capital shall be tried by a jury of twelve jurors, all of whom must concur to render a verdict. **A case for an offense committed prior to January 1, 2019, in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict**. A case for an offense committed on or after January 1, 2019, in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, all of whom must concur to render a verdict. A case in which the punishment may be confinement at hard labor shall be tried by a jury composed of six jurors, all of whom must concur to render a verdict. (emphasis added)

As acknowledged by Defendant, the new law does not affect the validity of Defendant's ten to two verdict. This Court in *State v. Warner*, 18-0739, p. 24 (La. App. 4 Cir. 5/29/19), 274 So.3d 72, 88 (quoting *State v. Cousan*, 1994-2503, pp. 17-18 (La. 11/25/96), 684 So.2d 382, 392-393), explained that "Louisiana follows the

---

[18] Effective November 22, 2010 to December 11, 2018.

21

general rule that 'a constitutional provision or amendment has prospective effect only, unless a contrary intention is clearly expressed therein.'" This Court continued noting that "La. C.Cr. P. art. 782 provides that the amendment to La. Const. Art. I §17 requiring unanimous juries does not have retroactive effect." *Id.* Defendant committed the offenses in 2015; thus, neither the amendment to La. Const. art. 1, § 17 nor La. C.Cr.P. art. 782 affected the number of jurors that had to concur for the verdict on Defendant's conviction for obstruction of justice.

In addition, recently in *State v. Laurant*, 19-0292, 2019 WL 3470924, at \*7 (La. App. 4 Cir. 7/31/19), this Court pertinently explained:

> Before the amendments to La. Const. Art. I § 17 and La. C.Cr.P. art. 782, and at the time of the instant offense, the constitutionality of non-unanimous jury verdicts was upheld in both *State v. Bertrand,* 2008-2215, 2008-2311 (La. 3/17/09), 6 So.3d 738, and *Apodaca v. Oregon*, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972). *See also State v. Johnson*, 2018-0409, p. 25 (La. App. 4 Cir. 3/13/19), 266 So.3d 969, 984, (reiterating that the 2018 amendments [to La. Const. art. 1, § 17 and La. C.Cr.P. art. 782] are prospective). Moreover, it is important to note that the Louisiana Supreme Court has not ruled that non-unanimous jury verdicts for crimes committed prior to January 1, 2019, are unconstitutional.

Furthermore, Defendant acknowledges that the United States Supreme Court has not overruled its holding in *Apodaca v. Oregon*, 406 U.S. 404, 92 S.Ct. 1628, (1972), wherein a plurality of the United States Supreme Court held that the Sixth Amendment guarantee of a jury trial, made applicable to the States by the Fourteenth Amendment, does not require that the jury's vote be unanimous to a defendant in state criminal courts.

Consequently, based upon the current statutory, constitutional, and jurisprudential law, we conclude that the Defendant's assertion that his Sixth

Amendment rights were violated by the lack of a unanimous jury verdict on the obstruction of justice conviction lacks merit.

## CONCLUSION

Defendant's convictions are affirmed, and his sentences are vacated and remanded to the district court for resentencing consistent with this opinion.

**AFFIRMED IN PART; VACATED IN PART AND REMANDED.**